# CHARLESTON.

UNITED FUEL GAS COMPANY *et als.* v. MORLEY OIL AND GAS COMPANY *et als.*

(No. 5748)

Submitted October 12, 1926.   Decided October 19, 1926.

INJUNCTION—

> When a grantee has accepted a deed which plainly restricts the use of the property conveyed to a specific purpose, he and his assigns may be enjoined from a use of the property at variance with the limitation.

(Injunction, 32 C. J. §§ 316, 319.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

Appeal from Circuit Court, Roane County.

Suit for injunction by the United Fuel Gas Company and

others against the Morley Oil & Gas Company and others. From a decree dissolving a temporary injunction, plaintiffs appeal.

*Decree reversed; injunction perpetuated.*

*Raymond Dodson* and *Harold A. Ritz,* for appellants.
*Thos. P. Ryan, S. P. Bell* and *Harper & Baker,* for appellees.

HATCHER, JUDGE:

This case was before us at a former term, when it was reversed for lack of a proper party. Our decision is reported in 131 S. E. 713, where a complete history of the case may be found. We will now state only such of the facts as will make our present decision intelligible.

In December of 1869, T. B. Swann and others, who owned approximately 5500 acres in Roane County, granted to the Township of Geary a tract of one acre, "to be exclusively appropriated and used as a site for a schoolhouse and school for the said township." The deed recites a consideration of $10.00, but contains no warranty of title. The plaintiffs are the successors in title of Swann and others, to the 5500 acre tract. The Morley Oil and Gas Company is the assignee of a lease of the said acre for oil and gas, which was made by the Board of Education of Geary District. This is a suit brought to enjoin the defendants from drilling on the school lot and removing oil and gas therefrom. The defendants admit that the schoolhouse acre lies in proven gas territory, and that a well thereon would drain the gas from a considerable adjacent area. A temporary injunction was granted by the circuit court of Roane County, which was later dissolved. The plaintiffs have appealed from that decree.

The sole question presented for our decision is: Do the words "to be exclusively appropriated and used as a site for a schoolhouse and school for the said township" merely express the purpose of the conveyance, or do they constitute a covenant restricting the use of the property?

The defendants assume doubt as to the meaning of the phrase in question, and invoke two well-known rules: (1) In

case of doubt as to the meaning of a deed, such doubt must be resolved in favor of the grantee, and (2) Restrictive covenants are not favored in equity. The application of both these rules was sought in a similar case recently before the Supreme Court of Virginia. That court in refusing to apply them said: "The first rule here mentioned is itself not a favorite, and is generally said to be the one of last resort when all other rules of construction have failed. It certainly is never to be resorted to unless the language involved can be said to be ambiguous. The second rule, which declares that restrictive covenants are not favored, simply means that all doubts are to be resolved in favor of the free alienation of real estate. Neither rule can operate when there is no room for doubt as to the intention of the parties." *Va. Ry. Co.* v. *Avis,* 124 Va. 711. The statement by the Virginia court is undoubtedly the law. 18 C. J. 386, par. 450.

There is another and more fundamental rule of construction which is applicable here: Words are to be given their ordinary and popular meaning unless they have acquired a peculiar significance. The words in question are of common use, of well-known definition, without peculiar significance, and are intelligently phrased. If the man on the street were asked the meaning of this phrase, he would undoubtedly say that the acre was to be used as a site for a schoolhouse and school and for no other purpose. The word "exclusively" is synonymous with the words "only" and "solely". It is a word of restriction and exclusion. As used in the deed, its effect is to prohibit the grantee from using the acre for any other purposes than the ones specified. There is no ambiguity or room for doubt as to the meaning of the phrase, and accordingly the two rules invoked by defendants have no application.

The defendants assert that the grantors could not possibly have meant to prohibit oil and gas production on the school acre, because in 1869 the acre was not known to be in oil and gas territory. Whether or not the grantors had specifically in mind the exclusion of oil and gas production, is immaterial. If the use of the acre be limited to the schoolhouse and school,

that limitation necessarily excludes every other use possible, whether foreseen or unforeseen by the grantors. The representatives of the Township well knew from the plain language of the deed, that the Township was not acquiring an absolute dominion over the acre. It is a fair assumption that if the Township had purchased or had been promised the unrestricted use of the lot, it would not have accepted the grant of a qualified and limited use. The acceptance of the deed with its restrictive covenant raises an implied agreement on the part of the Township to use the lot only for the purposes specified.

The defendants further contend that this phrase was inserted in the deed merely to show that it was for a purpose which "the Board had a right to take under the law." They cite 8 R. C. L., Deeds, Sec. 161, and rely particularly on *Phillips Oil and Gas Co.* v. *Lingenfelter,* 262 Pa. 500. In the Pennsylvania case, a lot was conveyed to the School Directors of a township "for school purposes only." In its opinion the court said: "The directors of the school district could not have purchased the lot for any other purpose than named in the deed and their acceptance of it with the insertion in it of the words 'for school purposes only' was a needless admission by them that they were acting within the powers conferred upon them by the Act of the Assembly. It was simply that, and nothing more, and the deed in all respects admittedly conveying an absolute estate, is not affected by them." The contention of defendants and the persuasive authority of the Pennsylvania court are not relevant to this case because the status of a Township under the laws of West Virginia in 1869 was entirely different from that of the School Directors of a Pennsylvania Township. The West Virginia Township had no jurisdiction over schools. The control of the schools was lodged then, as now, in a Board of Education for the Township. It is true that the Township collected the taxes for the schools, but the Township had other well-defined duties. It had charge of the roads and bridges, and the poor, within its territory. Consequently, a conveyance of property to a Township in West Virginia in 1869 would not necessarily mean

that the property was for school purposes. Without specific
direction as to use, the Township could have used this acre
for a poorhouse, or a township hall, or in connection with the
construction or maintenance of its roads, as well as for school
purposes.

The defendants also cite *Brown* v. *Caldwell*, 23 W. Va. 187,
*Herald* v. *Board of Ed.*, 65 W. Va. 765, and *Kilgore* v. *County
Court*, 80 W. Va. 283. The *Brown* case opposes rather than
supports the contention of defendants. In drawing a distinc-
tion between a covenant and a condition subsequent, Judge
SNYDER, who wrote the opinion, clearly recognized the right
of a grantor to require performance of a restrictive covenant.
''It is not words of exclusion that create a conditional estate,
but words importing an intention to create such estate. The
grant itself must be conditional and not merely the use limited.
In the latter case the restriction can at most operate only as
a covenant which the grantee might in a proper case be com-
pelled to perform.'' In the *Herald* case the deed expressed
the purpose of the grant, but made no attempt to limit the
use of the lot to that purpose. The *Kilgore* case presents the
same situation. All that was decided by the court in those
cases, was that a declaratory purpose did not create a condi-
tion subsequent which might forfeit the title. Forfeiture of
title is not sought in the present case, but only a compliance
by the grantee with the restrictive covenant. Therefore those
cases do not apply here.

We see no difference in effect between the covenant in the
present case and that in *Curtis* v. *Board of Ed.*, 43 Kan. 138,
where a deed was made to the Board conveying a lot for the
erection of a schoolhouse, ''and for no other purpose.'' The
court held that while the conveyance did not create an estate
on condition, either precedent or subsequent, yet the words
above quoted created ''a limitation upon the manner in which
the property should be used.'' In *Rowzee* v. *Pierce*, 75 Miss.
846, the court had under consideration a deed restricting the
use of a lot to public use as an ornamental park. In that
case the court held that the grantee could be restrained by
injunction ''from subverting the object of the donation by

building a public schoolhouse thereon." The Mississippi court in its opinion said: "it remains true, on principle and author-ity, that, the original donors dedicating this ground for a public ornamental park alone, are entitled in equity to pro-hibit the city authorities, or anyone in conjunction with them, from devoting it to any other use than such as is clearly con-sistent with the purposes of the original grant."

Another case equally in point is *Board* v. *Bedford High School*, 92 Va. 292, where a construction was made of a con-veyance to the Jeter Female Institute of a lot to be used as a female school, "and for no other purpose." The court held: "It is a covenant which restricts the use of the land to a par-ticular purpose, and which is binding on all those taking title to the property with notice thereof. It imposes a servitude upon the land which a court of equity will, in a proper case, enforce, * * * The cases are numerous in which such covenants are held to be valid and binding on purchasers taking with notice of them."

The principle followed in these cases is established beyond question. 7 R. C. L. 1114, pars. 30, 31; 18 C. J. 397; Devlin on Deeds, Sec. 977; Pom. Eq. Juris. Sec. 1295; High on Inj. Sec. 1153; *Whitney* v. *Union Ry. Co.* 77 Mass. 359; *Ball* v. *Milliken*, 31 R. I. 36, 37 L. R. A. 623; *Robinson* v. *Edgell*, 57 W. Va. 157.

The defendants finally contend that the burden is on the plaintiff to show that the covenant was for the benefit of the grantors. If a well on this acre would drain oil and gas from adjacent territory, and the Township and its assigns are pre-cluded by the covenant from using the acre for that purpose, then undoubtedly the covenant works a benefit to the adjoin-ing lands. The right of plaintiffs to injunctive relief, how-ever, does not depend on actual proof of benefits received or damages suffered. Pomeroy quotes with approval from Sir George Jessel, Master of the Roles, who is called one of the ablest of modern jurists: "It is clearly established by author-ity that there is sufficient to justify the court interfering, if there has been a breach of the covenant. * * * The moment the court finds that there has been a breach of the

covenant, that is an injury, and the court has no right to measure it, and no right to refuse to the plaintiff the specific performance of his contract." Pom. Eq. Juris. Sec. 1342. Further answer to this contention may be taken from the opinion of the court in *Robinson* v. *Edgell, supra:* "Although the clause is not a covenant to do a beneficial act upon the property of the grantor so as to directly annex to that property a benefit, but, on the contrary, binds the grantee to abstain from the doing, upon his own lot, of a certain act, a court of equity looks to the whole scheme as one intended to confer a benefit upon the property remaining in the hands of the grantor, * * * and therefore enforces observance of the provisions and restrictions, as readily as a court of law would award damages for the breach of a covenant annexed to real property in such a manner as to make it a covenant running with the land." Accord: *Ball* v. *Milliken,˙ supra.*

There is no equity in the demands of the defendants. The right to appropriate the acre for a school, includes all legitimate uses in the operation of the school. This prerogative would not permit denial of the privilege to use the very oil and gas on this acre for heating or lighting the school. But it does not include the right to extract these commodities for commercial uses, or the leasing of the lot for that purpose. *School District* v. *Barnes,* 110 Kan. 25.

The decree of the lower court is accordingly reversed and the injunction perpetuated.

*Reversed; injunction perpetuated.*

NOTE:

In a petition to rehear, it is urged that the foregoing opinion is at variance with the opinion in *Cole* v. *Seamonds,* 87 W. Va. 19. In that case the court drew a distinction between restrictions which benefit the dominant estate, and those which tend only indirectly to accomplish that end, or which "disclose a purpose primarily to benefit the covenantee in a particular use of the land, rather than to improve or preserve the physical condition of the land itself." Under the facts in that case, it was held that the restrictions tended only indirectly to the

physical or moral advantage of the covenantee's property, and relief was accordingly denied. That case differs from this, in that the limitation here is not a personal covenant benefitting merely a particular use of the grantor's property, but a *general restriction* designed "to preserve the physical condition of the land itself." Pt. 1 of the syllabus in *Cole* v. *Seamonds* asserts the very principle which we have applied in this case.

The petition also directs our attention to Secs. 5 and 6, Ch. 45, Code of 1868. Sec. 5 makes the board of education of a township a corporation. Sec. 6 provides that said corporation, "without any transfer or conveyance shall be deemed the owner of the real and personal property of *their* township which has been lawfully appropriated to the use of free schools." The petition contends that by reason of Sec. 6, the township of Geary was merely a conduit used to transmit the title of the school lot from the grantors to the board of education, and "that the purpose of placing the words in the deed was to specifically exempt the property from any township use and as of showing that it was of that class of township property which would pass to the board of education."

The board of education of the township of Geary was a corporation, expressly clothed with authority to receive grants for school use. There was no impediment in the way of a direct conveyance to the board. If the purpose of the grantors was to pass the title of the lot to the board, why did they not convey the lot directly to it, without attempting to use the township as an intermediary? No reason is given and none appears for the circuitous devolution suggested in the petition, instead of a direct conveyance to the board.

The theory advanced in the petition is adroit, but it is based on a wrong construction of Sec. 6, *supra*. That section was enacted in 1867. Its obvious purpose was to place in this new statutory corporation—the board of education—the title to school property theretofore held by other legal depositories. The section makes no reference to future appropriations for school use. It does not transfer to boards of education property which may thereafter be appropriated, but the property

"which has been appropriated" to school use. The language of the statute applies only to appropriations which were complete in 1867. The deed in question was not made until two years after the enactment, and therefore does not come within its provisions.