ATTORNEY GENERAL *v.* PERE MARQUETTE RAILWAY CO.

1. PROPERTY—INCIDENTS OF OWNERSHIP.

Incident of ownership is right to sell or lease or use property in any lawful way, and also to preserve property.

2. RAILROADS—USE OF RIGHT OF WAY—RESTRICTIONS—STATUTES.

Land acquired by railroad company by purchase is not subject to statutory restrictions imposed on land acquired by it through voluntary grant, which is restricted to use for purposes of grant only (2 Comp. Laws 1929, § 11121).

3. SAME—RAILROAD MAY FREELY USE OR SELL LAND ACQUIRED BY PURCHASE.

Where railroad company acquires fee to land by purchase, it may sell such portion as it does not require for railroad purposes as freely as though it were individual, or it may retain and use such surplus in any manner not inconsistent with purpose for which its charter was granted.

4. MINES AND MINERALS—OIL AND GAS—FUGITIVE PRODUCTS—EVIDENCE.

It is well known that oil and gas are fugitive products and may be carried away by operations on adjacent lands.

5. RAILROADS—RIGHT TO DRILL OR LEASE—MINES AND MINERALS—OIL AND GAS.

Railroad company owning fee in surplus land to its right of way has right to drill well for oil and gas or to lease to others for such purpose, providing such operations do not interfere with its railroad business or seriously invade and endanger public rights.

6. SAME—WILD LAND—DANGER FROM OIL WELLS.

Where railroad company's line is unimportant branch running through wild and unoccupied land devoted to production of oil and gas, and danger to public from drilling well on its surplus right of way is no greater than that from wells on adjacent property, it has right to drill wells or lease to others for said purpose.

7. SAME—ULTRA VIRES CONTRACTS—OIL AND GAS LEASE.
   Lease by railroad company of its surplus right of way, title to
     which it owns in fee, for purpose of drilling oil and gas well,
     is not *ultra vires*.

*Quo warranto* proceedings by Paul W. Voorhies, Attorney General, against Pere Marquette Railway Company to test right of defendant to drill for gas and oil on surplus land of its right of way owned in fee. Submitted April 20, 1933. (Docket No. 109, Calendar No. 37,052.) Writ dismissed June 5, 1933.

*Patrick H. O'Brien,* Attorney General, and *Walter A. Kirkby,* Assistant Attorney General, for plaintiff.

*John C. Shields* and *Arthur W. Penny,* for defendant.

McDONALD, C. J. This is a proceeding in the nature of a *quo warranto* brought by the attorney general of the State of Michigan to test the right of the Pere Marquette Railway Company either by itself or its lessee to drill for gas or oil on the surplus land of its right of way which it owns in fee absolute.

One of defendant's lines of railroad runs through the counties of Isabella and Clare in the northern part of this State. The land involved in this case is in Isabella county, and the defendant's road in that region runs through oil and gas territory. The railroad right of way is 100 feet wide. The defendant leased to W. J. Sovereign of Bay City a portion of its right of way not used or required in its railroad business for the drilling of gas and oil. The attorney general contends that the lease is invalid, that it is beyond the charter powers of the railroad com-

pany to make a lease for such purposes. Hence, he asks that the defendant refrain from drilling for oil or gas on its right of way, or, in default thereof, that it be required to surrender its charter and franchise.

The defendant contends that it owns the oil and gas in its right of way, that it has a right to extract them from the soil either by itself or its lessee, that in so doing it is not exceeding its corporate powers, and that such use of its surplus right of way does not interfere with the proper operation of its railroad business or with its duties to the public.

The defendant acquired the right of way in question by purchase. It owns the fee absolute. The oil, gas, and minerals in the soil are a part of the real estate. It owns them. An incident of ownership is the right to sell or lease or use the property in any lawful way. We find nothing in defendant's charter or in the statutes of this State which takes away its rights incident to such ownership. In 2 Comp. Laws 1929, § 11121, it is said that land acquired by a railroad company through voluntary grant ''shall be held and used for the purpose of such grant only.'' But land acquired by purchase is not subject to such restrictions. We think it cannot be questioned that where a railroad company acquires by purchase the fee to land it may sell such portion as it does not require for railroad purposes as freely as though it were an individual, or it may retain and use such surplus in any manner not inconsistent with the purpose for which its charter was granted. One of the rights incident to ownership is the right to preserve the property. The record shows that producing wells are being operated on property adjacent to the defendant's right of way, in one instance within 25

feet of the center of its track. It is well known that oil and gas are fugitive products and may be carried away by operations on adjacent lands. The plaintiff has a right to stop such drainage, and the only way it can be done is by drilling a well and extracting the oil and gas from its own property. Being the absolute owner, the railroad company has a right to deal with its surplus property as freely as an individual, except that its operations must not interfere with its railroad business or seriously invade and endanger public rights. It is not claimed that drilling for oil and gas on defendant's right of way has interfered or will interfere with a proper operation of its railroad business. Whether it endangers the public interests is a matter that we shall presently discuss.

In *Northern Pacific R. Co.* v. *North American Telephone Co.*, 144 C. C. A. 489 (230 Fed. 347, L. R. A. 1916 E, 572), it was said by Judge Sanborn:

"A railway company, which has become the owner of a railroad which it is operating and of a right of way appurtenant thereto, has the exclusive right to the use of that right of way for telegraph purposes as well as for railroad purposes. If after the application of so much of the use thereof as the maintenance of its own railroad and telegraph requires there remains a surplus use of that right of way either for telegraph purposes or for railroad purposes, *it may lease or permit that use, or any part of it, for a valuable consideration for any purpose which does not interfere with its operation of its own railroad and telegraph and its discharge of its duties to the public so to operate them. This right of a railroad company to lease or permit the surplus use of its right of way, or of its property, is its private property and it is often very valuable property.*"

In *Kynerd* v. *Hulen* (C. C. A.), 5 Fed. (2d) 160, it is said:

"When it acquires a fee simple estate in land its right to use the same is as absolute and unrestricted as that of an individual, at least so long as the State does not complain."

And in Summers, Oil and Gas, p. 224, it is said:

"But where a railroad company takes title to land by an absolute conveyance, without any exception or reservations, the railroad company has been held to have the privilege of producing oil and gas, or of leasing the land to others for oil and gas purposes, and that such power could not be questioned by the grantor, but only by the State."

See, also, *Quinn* v. *Railway Co.*, 256 Mich. 143, 154.

This brings us to a discussion of the claim of the State that the operations contemplated in the lease endanger the public safety.

In his brief the attorney general says:

"For the reasons that are set forth in detail elsewhere in this brief, the State of Michigan believes that the public interests are affected and endangered by a railroad company drilling oil or gas wells upon its right-of-way. It has, therefore, instituted these proceedings to compel such railroad company to return to its proper sphere."

It is conceivable that the drilling for oil and gas at some locations on a railroad right of way would endanger the public safety. However, the railroad at the point where it is here proposed to drill for oil and gas is an unimportant branch of the defendant's lines and runs through wild and unoccupied land, land devoted to the production of oil and gas. It is difficult to conceive greater danger to the public from

drilling on this right of way than on the adjacent property. In view of the situation as shown by the record, we think the drilling for gas and oil under the restrictions which appear in the lease does not endanger the public safety, nor does it interfere with the proper operation of defendant's railroad business. The lease is not *ultra vires*. The writ of *quo warranto* is dismissed.

Clark, Potter, Sharpe, North, Fead, Wiest, and Butzel, JJ., concurred.