[Civ. No. 17796. Second Dist., Div. Three. May 25, 1951.]

EVA C. TAYLOR, Appellant, v. CONTINENTAL SOUTHERN CORPORATION (a Corporation), Respondent.

William M. Taylor for Appellant.

George H. Emerson for Respondent.

WOOD (Parker), J.—Plaintiff alleged in her complaint that on December 18, 1944, she and the defendant entered into a written community oil and gas lease whereby she leased to defendant all the highways, streets, roads, and alleys within a certain "described area" in the downtown section of the city of Long Beach (The area is described in Schedule "A" of the lease. It may be stated generally that the area is bounded by Pine Avenue on the east, the Los Angeles County Flood Control Channel on the west, Fourth Street on the north and Seaside Boulevard on the south); defendánt agreed to pay to plaintiff her pro rata share of 13.125 per cent of all the oil and gas produced from the lands in the lease, and that her pro rata share would be the proportion that the area leased by her bore to the total area of the lands leased by

defendant as shown in said Schedule "A"; thereafter, defendant entered into possession of said premises and extracted oil and gas therefrom; defendant has failed to account to plaintiff for royalties due under the lease and has not paid any royalty to her. She asked that the defendant be required to account to plaintiff for her proportionate interest in the proceeds from oil and gas produced under the lease.

Defendant, in its answer, denied each allegation of the complaint, except (1) "that defendant admits that on or about August 18, 1945, the plaintiff and defendant executed a written instrument in which the plaintiff was named as lessor and defendant as the lessee, under the provision of which the plaintiff purported to lease to defendant any and all right, title and/or interest which she then might have or might thereafter acquire in or to any part of the lands described in" the complaint, and except (2) "that defendant admits that it has not accounted to or paid to plaintiff any royalty." In connection with such denials and admissions defendant alleged that since said August 18, 1945, plaintiff has not proved that she was or is the owner of any right, title or interest in any part of the property described; that at the time of the execution of said instrument the plaintiff did not have, and does not now have, any right, title or interest in any part of said property; that defendant was not obligated to account to plaintiff or to pay any royalty to her.

The court found that all the allegations of the complaint are untrue, except that it is true that a certain instrument in writing, which was known as "Continental Southern Community Oil Lease," was executed by plaintiff and defendant; and that all the allegations of the answer are true. It was adjudged that plaintiff take nothing. She appeals from the judgment.

■ Appellant contends that the findings are not supported by the evidence. She introduced in evidence (as Exhibit 3) a document entitled "Community Oil and Gas Lease" which was executed by plaintiff as lessor and by defendant as lessee. The document was a counterpart of the community oil lease which covered approximately 750 parcels of land that were in said "described area" of approximately 185 acres. The said counterpart of the lease was made by using a printed form which consisted of three pages of small printing. With a few exceptions, it contains substantially all the provisions usually found in the form of oil and gas lease customarily used in this locality. One exception appears in

paragraph 17, which paragraph (prior to deleting a portion thereof) was in part as follows: "17. Each Landowner individually hereby warrants and agrees to defend the title to his lands hereinafter described, and agrees that the Operator, at its option, may pay and discharge any taxes, mortgages . . ." Prior to executing the counterpart, the parties hereto struck from said paragraph the following words: "warrants and agrees to defend the title 'to his lands hereinafter described, and." The president and assistant secretary of the defendant corporation and the plaintiff placed their initials on the margin of the form opposite the warranty of title provision which had been stricken out. Another exception pertains to the "Description of Property" covered by said counterpart of the lease. Said description of the property is set forth in typewriting following the signatures of the parties and, insofar as it pertains to the property involved in this action (the highways, streets, roads, and alleys within the "described area"), the description is as follows: "As to any and all right, title, and/or interest which Lessor may now have, and/or may hereafter acquire by whatsoever means, in and to all or any part of the lands hereinafter described, towit: . . . [Lots C, D, and E of The Ocean Front, which are not involved in this action] and any and/or all highways, streets, ways, roads and/or alleys within the 'described area' ' '"; and "As to any and all right, title, and/or interest which Lessor may now have, and/or may hereafter acquire by whatsoever means, in and to all or any part of the lands hereinafter described, towit: . . . [the Pacific Park which is not involved herein] and any and/or all highways, streets, ways, roads and/or alleys within the 'described area.' "

Appellant also introduced in evidence (as Exhibit 1) a grant deed made on March 5, 1946, by Mary Cabezud, a single woman, as grantor, which recited that she did thereby grant to Eva C. Taylor (plaintiff) "all the reversion and reversions and any and all other interests and rights in and to all the property described in the following deeds as recorded in the following books and pages of Deeds of the Records of the County of Los Angeles, State of California, the same being the reversion and reversions and rights and other interests created by said deeds in favor of the Long Beach Land and Water Company, a corporation organized under the laws of the State of California, (said rights and reversion and reversions having been heretofore transferred to this grantor), as follows: . . ." After said words "as follows" in the deed,

there were references to 37 deeds of record in the office of the Recorder of Los Angeles County. After said references therein, the deed recited further: "Together with all other rights and reversion and reversions and land and interests therein, including the fee title to the streets and alleys, whether said interest be of record or not, which I acquired from the Long Beach Land and Water Company."

Appellant also introduced in evidence (plaintiff's Exhibit 8) a grant deed made on October 15, 1945, by "THE LONG BEACH LAND AND WATER COMPANY By A. C. Helvey, President of its Trustees By A. J. Clark, Secretary of its Trustees," as grantor, which recited that The Long Beach Land and Water Company did thereby grant to Mary Cabezud certain parcels of land in the Rancho Los Cerritos in Los Angeles County as follows: "Lots C, D, E, F, G, and H of the OCEAN FRONT OF LONG BEACH, as per Book . . . [which lots are not involved in this action], and All that property situate and being in the City of Long Beach, bounded . . . [here is a description of the Pacific Park which is not involved in this action], and All streets, hi-ways, roads and alleys shown on maps recorded on pages 89, 90, 91, 92, 93, 94, 95 and 96 of Book 19 of Miscellaneous Records of said County, and All streets, hi-ways, roads and alleys shown on maps recorded on pages 67 et seq., of Book 28 of Miscellaneous Records of said county."

Appellant also introduced in evidence a judgment of the Superior Court of Los Angeles County (Exhibit 9), entered August 5, 1947, entitled Eva C. Taylor, plaintiff, v. A. J. Clark and others, as trustees of the Long Beach Land and Water Company, a dissolved corporation, "defendant." It was adjudged therein, among other things, that the title to all the streets and alleys dedicated by the Long Beach Land and Water Company, by map recorded in Book 19, pages 89 to 96 inclusive, of Miscellaneous Records, and by map recorded in "Book 28, pages 67 and seq." of Miscellaneous Records of Los Angeles County, California, be quieted in the plaintiff Eva C. Taylor and against A. J. Clark and others as trustees of the Long Beach Land and Water Company, a dissolved corporation; and that the "defendant" has no right, title, or interest in or to said property, reversions or rights, and that plaintiff Eva C. Taylor is the owner of said property, reversions and rights.

Appellant also introduced in evidence a judgment of the Superior Court of Los Angeles County (Exhibit 10), entered

May 5, 1948, entitled "In the Matter of the Long Beach Land and Water Company, a dissolved corporation." It was adjudged therein, among other things, that the petition of the Long Beach Land and Water Company "by its duly authorized officers and authorized and appointed trustees" for an order confirming "certain sales and resolutions" be granted; that the sale by Beatrice Porter, the then sole trustee of said company, to Mary Cabezud of all the lands and rights of said company in the Rancho Los Cerritos is confirmed; that the resolution of the trustees of said company confirming and ratifying said sale is confirmed by the court; that the resolution of the trustees of said company electing a president and a secretary and authorizing them to execute deeds on behalf of the company is confirmed; and that the deed executed by them to Mary Cabezud of all the lands and interests of said company in Rancho Los Cerritos is confirmed.

Appellant also introduced in evidence a map of the "Town Site of Long Beach" which was recorded July 30, 1887, in Book 19, pages 91 to 96, showing the streets and alleys which were within the "described area" referred to in said counterpart of lease involved in this action. A statement on the map, which was signed by the county recorder, shows that the map was recorded at the request of A. E. Pomeroy. It appears from another statement thereon that A. E. Pomeroy was secretary of the Long Beach Land and Water Company. Another statement on the map was as follows: "We the undersigned hereby certify that this map is a true copy of the map by and according to which we have heretofore made conveyances of Lots and Blocks in the Town site of Long Beach and in the Town Site formerly known as Willmore City, said Willmore City now forming a part of and included within the boundaries of said town of Long Beach and known as Long Beach. Dated Los Angeles, Cal. July 30 1887. Jotham Bixby · [Seal] Lewellyn Bixby [Seal] Thos Flint by his attorney in fact [Seal] Lewellyn Bixby [Seal]"

It was stipulated that the royalty rate from production under the lease to July 31, 1949, was $79.301615 per 1,000 square feet. Oil wells were located within the "described area," but they were upon properties removed "from the properties which are the subject of this litigation." The wells were whipstocked from the flood control channel (which was on the west side of the described area) to the area east of the channel.

Defendant (respondent) introduced in evidence a counter-

part of said oil lease, which counterpart was executed by the city of Long Beach as lessor and defendant as lessee, covering certain parcels of land in the "described area," namely, the Library Block, Pacific Park, portions of 3 blocks (being 18 lots), and a strip of land about 10 feet wide and 100 feet long. It also introduced in evidence another counterpart of said lease, which was executed by the city of Long Beach as lessor and by defendant as lessee, covering parcels of land which are not in the "described area" involved herein. (Those parcels being Lots C, D and E of the Ocean Front hereinabove mentioned, and six other lots and a strip of land about 47 feet wide and 500 feet long.)

An assistant engineer of the city of Long Beach, called as a witness by defendant, testified in part that the city of Long Beach owned the parcels of land which were described as the leased property in said two counterparts of the lease that were executed by the city of Long Beach.

Appellant argues, in support of her contention that the findings are not supported by the evidence, that she proved all the allegations of her complaint, and that defendant failed to produce any evidence to the contrary. She also argues that defendant, being the lessee, could not dispute the plaintiff's title. Defendant argues to the effect that recordation of the map of Long Beach in 1887 (plaintiff's Exhibit 7), and the sale of lots by reference to the map, was to accomplish a dedication to public use of the streets delineated on the map; that since there was such a dedication of the streets and since the lots were sold by such reference, each owner of a lot in the leased area, which lot adjoins a street or road, owns the land to the center of the street or road; and that plaintiff (who was not an owner of a lot therein) did not have any title to the streets or alleys.

Under the provisions of the lease upon which plaintiff based her action and under the allegations of the answer, title of the plaintiff to the streets and alleys was an issue in the action. According to the first paragraph of the lease, the respective lessors are referred to in the lease as the landowner and the lessee is referred to as the operator. Paragraph A provides in part that each landowner covenants for himself that "he is the owner" of the parcel of land which is particularly set forth following his signature on the lease. The description so set forth in the lease, with respect to the property involved here, is: "As to any and all right, title and/or interest which Lessor may now have, and/or may

hereafter acquire by whatsoever means, in and to all or any part of . . . any and/or all highways, streets, ways, roads and/or alleys within the 'described area.' '' Paragraph 20 provides in part: ''Should title to any of the land of any Landowner . . . be declared to be defective or contested, then unless such defect or contest be waived in writing by the Operator, at Operator's sole discretion, the share of the Landowner thereof shall remain in escrow with such person . . . acting as the Collecting Agent for the Landowners, until such title is cleared.'' Paragraph 21 provides in part: ''Each of the persons signing this instrument as Landowner, . . . agrees with each of the others and with the Operator that any person . . . may at any time become a lessor under this lease, provided that such person is, at the time, the owner of a . . . parcel of land . . . within the boundaries described in Schedule 'A' hereof. No such land owner may become a lessor without the consent of Operator. Upon becoming such lessor . . . each such land owner shall from the date of so becoming a lessor, participate in all of the benefits and be subject to all of the covenants, provisions, and conditions of this lease.''

 It is the general rule that a tenant is not permitted to deny the title of his landlord, but there are exceptions thereto. When the provisions of the lease show that it was contemplated by the parties that the lessee may question the title of the lessor, the general rule is not applicable. It is to be noted that in describing the property leased the lessor did not state that she leased the streets and alleys. The description of that which she leased was any right, title or interest which she may now have or may hereafter acquire in the streets and alleys. Although said description of the property leased would be consistent with a theory that plaintiff was leasing the streets and alleys even though she might not own any part of them, it is not to be assumed that she intended to participate in the royalties from the community lease without contributing to the community interest something of value. In other words, it is not to be assumed that she entered into the lease for the purpose of obtaining something for nothing. The reasonable interpretation to be placed upon the provisions of the lease, in view of the particular provisions relating to plaintiff's ownership hereinabove referred to, is that it was a condition of the lease that plaintiff should own a right or interest in the streets or alleys in order to participate in the royalties. She had covenanted to the effect that she was an owner of land in the area covered by the lease. It

was a community lease, and she agreed with the other persons who were lessors in the community lease and with the lessee that any person might become a lessor under the lease provided such person was an owner of land within the area covered by the lease. She agreed that if her title to the streets or alleys should be declared to be defective or contested, then at the sole option of the lessee her alleged share of the royalties might remain in escrow until such title is cleared. It therefore appears that it was contemplated, under the provisions of the lease, that the lessee could question the title of the plaintiff. If the defendant could not question the title of the plaintiff and should thereby be required to admit that plaintiff owned the property so indefinitely "described," the result would be a pointless admission to the effect that the plaintiff owned an interest in the streets and alleys if she in fact owned any interest therein. It is true that the provision in the printed form of the proposed lease to the effect that the lessor warrants and agrees to defend his title was excluded from the lease, but the omission of said provision does not mean that the lessor was not required to be an owner of property within the area. It might be that such provision was omitted in order that plaintiff might not be held liable in damages for a breach of warranty of title or for failure to defend her title. At the trial counsel for plaintiff apparently was of the opinion that the title of plaintiff to the streets and alleys was an issue. As above shown, plaintiff introduced in evidence two deeds, two judgments, and a map for the purpose of proving that plaintiff had title. Also, plaintiff offered to testify that she owned the streets and alleys. Counsel for plaintiff stated at the trial as follows: "I believe we have stipulated that . . . if the Court does rule in this action that the plaintiff is the *owner* and is entitled to the oil and gas royalty from the streets and alleys . . . then the defendant agrees to furnish the Court within sixty days its computations by its engineers showing the royalties. . . ."

It was not proved that plaintiff had any title or right to the streets or alleys or any part thereof. The portions of the lands designated on the map, recorded in 1887, as streets and alleys were dedicated to public use as streets and alleys. (See *San Leandro* v. *Le Breton,* 72 Cal. 170, 174, 175 [13 P. 405] ; *Archer* v. *Salinas City,* 93 Cal. 43, 52 [28 P. 839, 16 L.R.A. 145] ; *Allan* v. *City & County of San Francisco,* 7 Cal.2d 642, 648 [61 P.2d 1175].) It is presumed that the owners of the lots adjoining the streets and alleys own the

land to the center of the streets and alleys. Section 831 of the Civil Code provides: "An owner of land bounded by a road or street is presumed to own to the center of the way; but the contrary may be shown." Section 1112 of the Civil Code provides: "A transfer of land, bounded by a highway, passes the title of the person whose estate is transferred to the soil of the highway in front to the center thereof, unless a different intent appears from the grant." There was a provision in the lease (paragraph 13) to the effect that the area owned by each landowner "shall be deemed to extend to the center" of streets and alleys abutting thereon, provided the reversionary rights to the center of the streets or alleys remain with such owners; but if the fee title to the streets or alleys is in others than the owners of the abutting property, the streets and alleys shall be considered as separate parcels under the lease. There was no proof that the Long Beach Land and Water Company reserved or had any reversionary interest in the streets or alleys. The alleged title of Mary Cabezud was based upon a grant deed made by persons purporting to be the president and secretary of the trustees of the Long Beach Land and Water Company. The alleged title of plaintiff was based upon a grant deed made by Mary Cabezud. The contrary of the presumption stated in section 831 of the Civil Code was not proved. It did not appear "from any grant" that any grantor did not intend to pass title "to the soil of the highway in front [of his land] to the center" of the highway. The plaintiff, of course, did not have possession of the surface of the streets or alleys. The oil wells were whipstocked, as above stated, from the flood control channel to the area east of the channel. The lease provided that the lessee would not occupy the surface of the area leased east of that channel, and that as to the area east of the channel the lessee's operations would be confined to the portion of the subsurface beneath a depth of 200 feet below the surface. It was not shown that plaintiff had any right of possession of any part of such land below the surface of the streets and alleys, or that she delivered to defendant possession of such land.

Appellant also contends that the court erred in sustaining defendant's objection to a question asked plaintiff as to whether she owned the streets and alleys. The objection should not have been sustained. The court, however, did not err prejudicially in sustaining the objection, for the reason

that plaintiff thereafter introduced in evidence the deeds above mentioned under which she claimed title.

The judgment is affirmed.

Vallée, J., concurred.

SHINN, P. J.—I concur. I think plaintiff's proof showed that she had no title to the property described in the lease. Anything paid to her as royalty on property she did not own would result in detriment to defendant in the same amount. Plaintiff having shown herself to be guilty of breach of warranty of title (since she owned no right, title or interest whatsoever), and the detriment appearing with certainty, it would be futile to allow the litigation to proceed further. In no aspect of the case can it be said that the judgment results in a miscarriage of justice.

A petition for a rehearing was denied June 12, 1951, and appellant's petition for a hearing by the Supreme Court was denied July 19, 1951.