[Civ. No. 20474. Second Dist., Div. Three. Mar. 3, 1955.]

EVA C. TAYLOR, Appellant, v. CONTINENTAL SOUTHERN CORPORATION (a Corporation), Respondent.

William M. Taylor for Appellant.

George H. Emerson for Respondent.

ASHBURN, J. pro tem.*—Plaintiff Eva C. Taylor appeals from an adverse judgment in an action brought to obtain an accounting and payment of royalties alleged to be due her under a community oil and gas lease. Defendant Continental Southern Corporation successfully challenged her right to any relief. And the ruling seems to have been based upon a failure of proof of any cognizable interest in plaintiff with respect to the property described in the lease.

Plaintiff and defendant, about August 28, 1946, signed as lessor and lessee, respectively, one of the counterparts of a community lease which was dated December 18, 1944. The property covered by that counterpart was therein described as: "As to any and all right, title, and/or interest which Lessor may now have, and/or may hereafter acquire by whatsoever means, in and to all or any part of the lands hereinafter described, towit: Lot C, D, and E of The Ocean Front of the City of Long Beach, as recorded in Miscellaneous Records Book 39, pages 18 to 33, Records of Los Angeles County; and any and/or all highways, streets, ways, roads and/or alleys within the 'described area.'

"As to any and all right, title, and/or interest which Lessor may now have, and/or may hereafter acquire by whatsoever means, in and to all or any part of the lands hereinafter described towit:

"All that certain lot, piece or parcel of land situate, lying and being in the City of Long Beach, in the County of Los Angeles, State of California, boun[d]ed and particularl[y] described as follows, towi[t];

"Bounded on the north by Second Street, on the east by Pacific Avenue, on the south by Ocean Park Avenue, and on the west by Cedar Avenue, as per map of the Town of Long Beach, as recorded in Book 19 of Miscellaneous Records, pages 91 to 96 inclusive, in the County Recorder's office of Los Angeles County; and any and/or all highways, streets, ways, roads and/or alleys within the 'described area'.'' The property involved in this action is the portion described as "Lot C, D and E of The Ocean Front of the City of Long Beach."

---

*Assigned by Chairman of Judicial Council.

Three companion cases have been reviewed by this court, our Civil No. 17796, entitled *Taylor* v. *Continental Southern Corp.*, reported in 104 Cal.App.2d 425 [233 P.2d 577]; No. 17797, same title, reported at page 435 of same volume; and 17798 entitled *Taylor* v. *Continental Northern Corp.*, reported at page 438 [233 P.2d 585]. The lease involved in the case now on appeal was also the subject of those decisions; in each it was held that plaintiff had failed to make a case. The action at bar involves Lots C, D and E of the Ocean Front Tract in Long Beach. These lots are and have been for many years used as a public park. No. 17796 dealt with that portion of the above description which reads: ". . . and any and/or all highways, streets, ways, roads and/or alleys within the 'described area' ''; No. 17797 involved the portion described as: ". . . bounded on the north by Second Street, on the east by Pacific Avenue, on the south by Ocean Park Avenue and on the west by Cedar Avenue." This portion is known as Pacific Park. No. 17798 covered streets etc. falling within the same description as No. 17796, but lying to the north of those streets.

The major question presented in the former cases was whether defendant lessee could question the title of plaintiff lessor. This was answered in the affirmative. This court, speaking through Mr. Justice Wood, said at page 432: "It is the general rule that a tenant is not permitted to deny the title of his landlord, but there are exceptions thereto. When the provisions of the lease show that it was contemplated by the parties that the lessee may question the title of the lessor, the general rule is not applicable. It is to be noted that in describing the property leased the lessor did not state that she leased the streets and alleys. The description of that which she leased was any right, title or interest which she may now have or may hereafter acquire in the streets and alleys. Although said description of the property leased would be consistent with a theory that plaintiff was leasing the streets and alleys even though she might not own any part of them, it is not to be assumed that she intended to participate in the royalties from the community lease without contributing to the community interest something of value. In other words, it is not to be assumed that she entered into the lease for the purpose of obtaining something for nothing. The reasonable interpretation to be placed upon the provisions of the lease, in view of the particular provisions relating to plaintiff's ownership hereinabove referred to, is that it

was a condition of the lease that plaintiff should own a right or interest in the streets or alleys in order to participate in the royalties. She had covenanted to the effect that she was an owner of land in the area covered by the lease. It was a community lease, and she agreed with the other persons who were lessors in the community lease and with the lessee that any person might become a lessor under the lease provided such person was an owner of land within the area covered by the lease. She agreed that if her title to the streets or alleys should be declared to be defective or contested, then at the sole option of the lessee her alleged share of the royalties might remain in escrow until such title is cleared. It therefore appears that it was contemplated, under the provisions of the lease, that the lessee could question the title of the plaintiff.''

Having determined this central proposition the court held in that same case that plaintiff's proof failed to show that she had any legal interest in any of the streets in question and therefore the judgment should be affirmed. Plaintiff in that case relied upon the same chain of title as in the cause now on appeal; but defendant introduced at the trial of the instant case certain evidence which raises a title question peculiar to this action.

In No. 17797, relating to Pacific Park, plaintiff rested upon certain secondary evidence which was stricken, and she ''elected to avoid the production of the best evidence'' with the result that she had no proof at all, and the judgment was affirmed. In No. 17798 the evidence was substantially the same as in No. 17796, and affirmance also followed.

These three decisions of this court, determining the effect of the lease here involved, establish the law to be that defendant herein may attack the title of its lessor. Of course they are not technically the law of the case, because the actions are different. (*Estate of Wickersham,* 153 Cal. 603, 614 [96 P. 311].) Nor do they operate as res judicata (as claimed by respondent), for they were not alleged or proved as such, and courts will not take judicial notice of a former judgment as a basis for applying the res judicata rule. (*Willson* v. *Security-First Nat. Bank,* 21 Cal.2d 705, 711 [134 P.2d 800]; *Weil* v. *Barthel,* *(Cal.) 279 P.2d 544.) But they do stand as an authoritative declaration of the legal effect of the instant lease and are sufficient authority for a holding, with-

---

*A rehearing was granted on Mar. 3, 1955.

out further discussion, that defendant was free to question the title of plaintiff in this instance.

In both of the street cases the court significantly remarked "There was no proof that the Long Beach Land and Water Company reserved or had any reversionary interest in the streets or alleys." This last observation points up a difference in proof which requires an independent consideration of the nature of plaintiff's title, if any, to Lots C, D and E. That question turns largely upon the effect of a certain deed of May 13, 1889, from The Long Beach Land and Water Company to City of Long Beach which became Exhibit A in this case but was not placed in evidence in any of the cases previously decided by this court. It enters into the chain of title which must be examined.

The Long Beach Land and Water Company is a common source of title for the parties to this suit and for the city of Long Beach. On May 13, 1889, it made a deed to the city of Long Beach conveying said Lots C, D and E and other properties for park purposes. It starts with a recital of a resolution of the grantor's board of directors expressing an intention to "remise, release, convey and quit-claim" to the city certain lands "in consideration of and in full settlement of all differences, difficulties and disputes which have hitherto arisen between it and the said city of Long Beach and in full settlement of the rights of the said city of Long Beach, involved in the case of the Long Beach Land and Water Company against the city of Long Beach, and for the use and benefit of the inhabitants of the said city of Long Beach in the said county of Los Angeles, State of California to be used exclusively as and for a public park or parks for the purpose of ornamentation, and as a place for recreation, public health and pleasure and upon the conditions hereinafter named and reserved:" Here follow descriptions of parcels. Then this: "Upon the condition that the above described property and the whole thereof, be used exclusively for the benefit of the inhabitants of said city, and of all the public as and for a public park for the health and recreation and pleasure of the inhabitants of said town and of the public: and upon the further condition that no buildings or structures of any kind be erected upon said premises which would obstruct the view of the Pacific Ocean from the lots north of and immediately opposite the property above described." The resolution concludes with authority to the officers to convey "but upon the conditions hereinbefore contained." Omitting certain other matters here irrelevant,

the granting clause is reached, and it says: "Witnesseth: that the said party of the first part, for the consideration in said resolutions expressed has conveyed, remised, released and quit claimed, and by these presents does remise, release and convey and quit claim unto said party of the second part, and to its successors in interest, all and singular the premises and rights of way described in the foregoing resolution which are thereby authorized to be conveyed, as and in the manner and for the uses and purposes, and with the limitations and upon the conditions in said resolution set forth which resolution is hereby made a part of this conveyance. To have and to hold, the same unto the party of the second part, and to its successors in interest forever."

■ The deed clearly is a conveyance upon condition subsequent, a reentry clause being unnecessary. (*Papst* v. *Hamilton,* 133 Cal. 631 [66 P. 10]; *Martin* v. *City of Stockton,* 39 Cal.App. 552, 556 [179 P. 894].)

This conveyance left in the grantor what is commonly known in legal parlance as a possibility of reverter. Though not transferrable at common law, section 1046 of our Civil Code has attached that quality to it and it is recognized as "a contingent estate, not a mere naked possibility of a future right." (*Johnston* v. *City of Los Angeles,* 176 Cal. 479, 486 [168 P. 1047]; to same effect see *Thornton* v. *Middletown Educational Corp.,* 21 Cal.App.2d 707, 710 [70 P.2d 234].)

By appropriate instrument the Land and Water Company transferred this contingent interest to Mary Cabezud on October 15, 1945. She had previously conveyed the same to plaintiff Taylor on March 27, 1945. Appellant therefore claims that she owns the reversionary right; also that it embraces the oil, gas and other underlying minerals.

It further appears that the city of Long Beach and respondent entered into a counterpart of the same community oil and gas lease on or about March 22, 1948. Production having been obtained by whipstock drilling from the flood control channel (which is outside the boundaries of the community lease), the defendant lessee has been paying the royalties to the city with respect to the lands involved in this case. Counsel for appellant stated at the trial that she has no claim against the city, and says in his closing brief: "Plaintiff has never claimed full ownership of the 'property' but only of the oil and gas, etc., and admitted the City has certain rights therein." This assumes that both the owner of the fee and the owner of the contingent right of reverter have ownership of the oil rights—

a manifest impossibility. The opening brief reflects clearer thinking when it says: "The crux of the case . . . is 'Did said deed convey all the fee, including the oil and gas, to all of the property to the City of Long Beach?'" To that question we address ourselves.

█ The general rule is that a dedication for park purposes passes a fee simple to the grantee (*Washington Blvd. Beach Co.* v. *Los Angeles,* 38 Cal.App.2d 135, 138 [100 P.2d 828]). See annotation entitled "Nature of estate conveyed by deed for park or playground purposes" in 15 American Law Reports 2d 975, 977. █ And a conveyance for park use not only carries all oil and minerals, but also the right to develop same in any manner not inconsistent with use of the surface of the land for park purposes. See cases collected in 144 American Law Reports at 507. The attorney general of this state had ruled that: "A county may enter into an operating agreement with the owner or possessor of land adjoining a county park for the development and production of oil by whipstocking or slant drilling from adjoining land into the subsurface of the county park provided that such drilling and operations incident thereto do not interfere with the surface use of the park by the public." (19 Ops. Cal. Atty. Gen. 157, 158.) This was done in the light of section 7051, Public Resources Code, providing for oil leases of county lands with this exception: "No land used, owned, dedicated, or acquired by purchase, condemnation, gift or otherwise, as a public park, highway, street, walk, or public playground shall be so leased;" It was held that this prohibited surface leasing, not slant drilling. A similar ruling was made in 21 Ops. Cal. Atty. Gen. 26.

In 9 Opinions Attorney General California 6 it appeared that the city of Long Beach had quitclaimed to the state certain tidelands "for a park, playground, recreational center and/or beach used for recreational purposes," the conveyance being upon express condition subsequent that the lands be so used. The attorney general ruled that the state had acquired a fee title including minerals and that it could lease the lands for oil production without violation of the condition.

█ It is clear that a public agency, such as a municipality, which takes a grant of land for park purposes acquires title to the minerals therein—being in the case of oil and gas the exclusive right of capture. (8 Cal.Jur. 10-yr. Supp. (1948 rev.) § 18, p. 616.) █ It would seem that the mere possibility of forfeiture of title for breach of condition subsequent could not affect that vested interest, not unless or until the

owner of the reversionary right has invoked the condition by reentering or suing in some form for declaration of termination of the grantee's title. (See *Firth* v. *Los Angeles Pacific Land Co.*, 28 Cal.App. 399, 404 [152 P. 935].)

Cases dealing generally with the effect of conditions subsequent establish that such is the law. *Parry* v. *Berkeley Hall School Foundation*, 10 Cal.2d 422 [74 P.2d 738, 114 A.L.R. 562] was an action to quiet title against conditions subsequent in certain deeds. Plaintiff had bought lots upon such conditions, which were held to have been violated. In response to plaintiff's action the Foundation cross-complained for reconveyance based on violation of the condition, and the lower court rendered such a judgment. In affirming it the Supreme Court used this language which is pertinent to the case now in hand. "Plaintiff's argument commences by making the assumption that a right of reentry for breach of a particular condition is an estate in reversion, a definite, identified part of the fee which is left in the grantor and his successors after transfer of a lesser estate to the grantee. It is true that decisions occasionally characterize the right of reentry as a 'reversionary interest' or 'contingent reversionary interest', and it is so regarded for some purposes. (See *Strong* v. *Shatto*, 45 Cal.App. 29 [187 P. 159]; *Barkhaus* v. *Producers' Fruit Co.*, 192 Cal. 200 [219 P. 435]; *Backus* v. *Duffy*, 103 Cal.App. 775 [284 P. 954].) . . .

"A more accurate analysis of the interest involved discloses that when the grantor conveys the fee simple on condition subsequent, he has no actual *estate* remaining with him. The grantee takes the entire estate of the grantor, and unless he breaches the conditions is in the same position as an owner in fee simple absolute. The interest of the grantor in such case is not, strictly speaking, a residue of the estate left in him; it is merely a right or power to terminate the estate of the grantee and retake the same, if there is a breach of condition. (Restatement, Property, § 45, Comment a; § 154; 1 Simes, Future Interest, § 159, p. 281.)" (Page 425.) And referring to successive grants containing conditions subsequent: "In each instance the grantee takes the whole fee, with the same rights as a grantee in fee simple absolute, as long as the conditions are obeyed." (Page 426.)

To the same effect are *City of Long Beach* v. *Marshall*, 11 Cal.2d 609, 613 [82 P.2d 362]; *Aller* v. *Berkeley Hall School Foundation*, 40 Cal.App.2d 31, 36-37 [103 P.2d 1052]; *Shultz* v. *Beers*, 111 Cal.App.2d 820, 823 [245 P.2d 334]; *City of*

*Santa Monica* v. *Jones,* 104 Cal.App.2d 463 [232 P.2d 55]. In the last cited case it was held that the successor to the grantor of a fee upon condition subsequent is not entitled to any portion of a condemnation award where there has been nò reentry or its equivalent through court action. At page 473 the opinion says: "The case up to this point has been dealt with upon the assumption, as contended for by the appellants, that a mere breach of a condition subsequent (which breach we have shown did not exist) prior to a condemnation of the property automatically permits the heirs at law of the grantor of a fee simple on condition subsequent to participate in the award of a subsequent condemnation. The rule of law is otherwise.

"In the case of a fee simple defeasible the grantor and his heirs are vested with the 'possibility of a reverter,' as distinguished from a 'right of entry' or a 'power of termination' in the case of a fee simple subject to a condition subsequent. (1 Simes, Law of Future Interests, § 159, p. 282; § 163, p. 291; § 176, p. 318; 2 Powell on Real Property, § 188, p. 40; § 191, pp. 56-57; 1 Tiffany, Real Property, 3d ed., §§ 188 and 220, pp. 302 and 383.) In short, upon the occurrence of the stated event in a grant of a fee simple defeasible the possibility of reverter takes effect in possession immediately, 'whereas, on the happening of the event named' in the deed of a fee simple subject to a condition subsequent 'the possessory interest does not vest immediately in the one having the right of entry for breach of condition; he must elect to terminate the granted estate before a possessory interest vests in him.' (1 Simes, Law of Future Interests, § 177, p. 321.)

"Accordingly, if in the instant case there had been a material breach of one of the conditions subsequent the heirs would nevertheless have had no right to participate in the award. This for the reason that the breach is not regarded as a breach until the grantor or his heirs elect to give it the requisite vitality by declaring a forfeiture based thereon by the process of reentry or its legal equivalent. Unlike a fee simple defeasible upon a limitation the breach does not cause an automatic reverter. 'Strictly speaking, the owner of a right of entry for breach of condition has a privilege and a power, but not a right; for by a right, in the strict sense, is meant a claim which may be enforced by legal machinery of some sort, and until an election to forfeit for breach,

there is no such right in the one for whose benefit the condition exists.' "

The cases just discussed do not specifically deal with the right to minerals as between the grantor and the grantee, but they necessarily lead to the conclusion that they reside in the owner of the conditional fee until a forfeiture of his title has been effected. It will be noted that the attorney general reached this result in 9 Opinions Attorney General California 6. And certain cases in other jurisdictions are in accord. In *Central Land Co.* v. *City of Grand Rapids*, 302 Mich. 105 [4 N.W.2d 485, 144 A.L.R. 478], the grantor sought to enforce a forfeiture of a condition subsequent in a park deed because the grantee made an oil lease which contemplated surface drilling. The court held there was no violation of the condition requiring use solely as a park, highway, street or boulevard, saying at page 486 [4 N.W.2d] : "Title to the land here involved was conveyed by plaintiff to the defendant city in fee subject to condition subsequent. Upon conveyance in fee title to the oil and gas under the land passed by the grant from plaintiff to the city, see *Attorney General* v. *Pere Marquette Ry. Co.*, 263 Mich. 431 [248 N.W. 860, 94 A.L.R. 520] ; *Quinn* v. *Pere Marquette Ry. Co.*, 256 Mich. 143 [239 N.W. 376, 380]. In the latter case we said: 'The deed contains no reservation to grantors. The grantee took title to the gas and oil in place. If there is a pool common to the lands of both parties, then, if defendant may not drill, plaintiff, by tapping the pool, may take oil belonging to defendant. Such a result could not be sanctioned. . . .'

"To the same effect see 24 American Jurisprudence, page 535, wherein it is also stated: 'Thus, it appears to be settled that when the fee to land has been granted or dedicated to the public for use as a street or highway, any subterranean deposits of gas or oil therein pass with the fee and do not remain in the grantor or dedicator.' "

*Langston City* v. *Gustin*, 191 Okla. 93 [127 P.2d 197], was a suit by the city to quiet title to land previously donated to it for cemetery purposes. Defendants were heirs of the donor and they were about to make an oil lease, claiming the city had only an easement. The court said, at page 198 [127 P.2d] : "The question in this case is whether a municipality of this state acquires a fee simple title to property acquired for a cemetery by a statutory dedication when the property was marked on the plat 'Donated.' " It held that a qualified or base fee passed under the statute (p. 200),

that that fee carried the mineral rights (p. 206), and plaintiff city was therefore entitled to a decree quieting title against defendants.

Cases cited by appellant are not contrary to the foregoing conclusions. *Marshall* v. *Standard Oil Co.*, 17 Cal.App.2d 19 [61 P.2d 520], was an action to enjoin drilling of an oil well in a public street. The drilling was held to be a public and a private nuisance and properly enjoined. The court said at page 26: "The ownership of the minerals lying beneath the surface of the street is not material if the premises were accepted upon trust" and that it had been so accepted. The case is not in point.

*Carter Oil Co.* v. *Myers*, 105 F.2d 259, held that a grant of a right of way to a county for highway purposes passed only an easement and hence the mineral rights remained in the grantor. The discussion reveals that in Illinois, where the dispute arose, a grant to a city for street purposes carries a fee while the same grant to a county conveys only an easement. The Carter Oil case recognizes, as does *Southern Pac. Co.* v. *San Francisco Sav. Union*, 146 Cal. 290 [79 P. 961, 106 Am.St.Rep. 36, 2 Ann.Cas. 962, 70 L.R.A. 221], that the grantor of a mere easement to use the surface of land retains all mineral rights. Neither of those cases is persuasive here. *Flaten* v. *City of Moorhead*, 51 Minn. 518 [53 N.W. 807, 19 L.R.A. 195], merely holds that a grant to a municipality "to be forever held and used as a public park" does not convey an "absolute title in fee." But the court also observed that "It is not incumbent upon us at this time to determine the precise nature of the estate conveyed by this instrument, whether a mere easement was acquired by the village, or an estate on condition or in trust."

*United Fuel Gas Co.* v. *Morley Oil & Gas Co.*, 102 W.Va. 374 [135 S.E. 399], holds that the successors to the grantor of property conveyed for use as a school site only are entitled to enjoin surface drilling for oil. At page 399 [135 S.E.] the court said: "The sole question presented for our decision is: Do the words 'to be exclusively appropriated and used as a site for a school house and school for the said township' merely express the purpose of the conveyance, or do they constitute a covenant restricting the use of the property?" No condition subsequent or question of ownership of minerals by the one having a possibility of reverter was involved or discussed. Other cited cases require no comment.

Appellant relies upon a superior court case entitled *Jotham*

*Bixby Co.* v. *City of Long Beach et al.,* claiming it is res judicata in her favor. She also makes the same claim for *Dunn* v. *Long Beach Land & Water Co.,* 114 Cal. 605 [46 P. 607]. ▮ But she did not plead or prove either of these judgments in the trial court and that is fatal to her present belated contention. (*Willson* v. *Security-First Nat. Bank, supra,* 21 Cal.2d 705, 711 [134 P.2d 800] ; *Weil* v. *Barthel, supra,* *(Cal.) 279 P.2d 544; 15 Cal.Jur., § 231, p. 211.) This is also true of the case of *Strand Improvement Co.* v. *Long Beach,* 173 Cal. 765, 768 [161 P. 975], to which appellant has referred from time to time.

Another contention of appellant concerns a procedural aspect of the trial,—denial of a motion to reopen plaintiff's case. The trial was on August 26, 1949. The court ordered the city of Long Beach brought into the case and continued the matter until October 3, 1949. On that date a demurrer of the city was argued and sustained; a pending demurrer to the answer to plaintiff's amended complaint and a motion to strike said answer were placed off calendar awaiting final disposition of a certain interpleader action entitled *Continental Consolidated Corp.* v. *Eva C. Taylor & City of Long Beach.* The rulings of this court in Civil Nos. 17796, 17797 and 17798 were made on May 25, 1951. The cause lay dormant until November 30, 1953, when defendant gave notice of a motion to restore the cause to the calendar, for judgment in its favor and for other or further relief. It was made on the ground that said interpleader action had gone to final judgment and that plaintiff was not entitled to any relief upon the proof made. In response to this notice plaintiff presented an affidavit referring to the decisions in the appealed cases, claiming this court had established new law, and alleging ''That the plaintiff has not rested in the instant case, but desires to introduce additional evidence, both oral and written, in support of her cause of action. That plaintiff desires to offer evidence of the contemplation and intent of the parties at the time of the execution of the lease between plaintiff and defendant.'' Plaintiff had definitely announced at the trial that she rested and defendant had produced some evidence. On the hearing of the motion on December 28, 1953, plaintiff consented to restoration to calendar and the motion to reopen was presented on behalf of plaintiff, was argued and denied. Defendant rested and judgment was

*A rehearing was granted on Mar. 3, 1955.

ordered in its favor. Appellant argues that the court withheld from her substantial rights in denying her motion to reopen. Counsel's opening brief says at page 4: "The Court erred in refusing to permit plaintiff to introduce any evidence, either oral or written, as to the contemplation and intent of the parties at the time of the execution of the lease on the question as to whether or not lessee could question the title of the plaintiff." At page 12: "So in view of said Appellate decision, plaintiff wished to produce in evidence written documents showing that it was not contemplated that lessee would question plaintiff's title, but that lessee had been fully informed as to plaintiff's title prior to the execution of the lease and that defendant wanted immediate execution of the lease by the plaintiff and that defendant was satisfied that plaintiff's title was good." ▉ Respondent points out that plaintiff's affidavit ". . . did not set forth what evidence she wished to introduce as to the contemplation and intent of the parties nor what that contemplation and intent was, nor did it contain a sufficient showing of the diligence on her part." This of itself was sufficient ground for denial. But counsel for appellant misapprehends the effect of our former rulings. The language we have quoted from 104 Cal.App.2d at 425, 432 [233 P.2d 577] shows that the court held as a matter of law that the lease itself required plaintiff to be an owner in order to participate in royalties and "that it was contemplated, under the provisions of the lease, that the lessee could question the title of the plaintiff." ▉ It is thoroughly settled that the implications of a written contract are as impervious to parol evidence as are express terms. (*Standard Box Co.* v. *Mutual Biscuit Co.*, 10 Cal.App. 746, 751 [103 P. 938]; *Calpetro Producers Syndicate* v. *C. M. Woods Co.*, 206 Cal. 246, 252 [274 P. 65].) ▉ The suggested additional evidence was inadmissible and the court's ruling was correct.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 27, 1955.