[Civ. No. 22043. Second Dist., Div. Three. Dec. 6, 1957.]

MYRTLE MAY DUNN et al., Appellants, v. COUNTY OF LOS ANGELES et al., Respondents.

*Assigned by Chairman of Judicial Council.

Courtney L. Moore for Appellants.

Harold W. Kennedy, County Counsel, Lloyd S. Davis, Deputy County Counsel, J. A. Tucker, Buford W. Max and R. K. Barrows for Respondents.

WOOD (Parker), J.—Appeal by plaintiffs from a judgment for defendants in an action for declaratory relief, to quiet title, for damages for inverse condemnation, and for an accounting.

On July 7, 1939, plaintiffs A. M. Dunn and Myrtle M. Dunn, husband and wife, executed a deed which recited that they granted to the county of Los Angeles certain real property. On July 11, 1939, the board of supervisors of said county accepted the deed and on July 20, 1939, the deed was recorded in the office of the county recorder. On April 20, 1950, the county, as lessor, and The Texas Company, as lessee, executed an oil and gas lease which contained a provision that The Texas Company had the exclusive right to drill for and produce oil upon the property. About August 22, 1950, oil was discovered by The Texas Company and since said date oil has been produced from wells upon said property in large quantities. On August 19, 1955, Mr. Dunn and Mrs.

Dunn commenced this action. Defendants are the County of Los Angeles and The Texas Company. In various places in the complaint the word "plaintiff" appears without any designation as to which plaintiff is referred to. (Apparently that word was intended to refer to plaintiff Mr. Dunn.)

The allegations of the first cause of action (for declaratory relief) were, in part, as follows: Plaintiff A. M. Dunn was the owner of a 1400-acre ranch situated near Newhall. About 1937 the board of supervisors of said county voted to acquire land for a prison farm. The ranch of said plaintiff was selected by the county as the best site for the prison. In 1937, appraisers employed by the county appraised the ranch, for agricultural purposes, at approximately $100 per acre. The county, through its agents, demanded that plaintiff sell his property to the county upon the basis of the appraisement of $148,000. The county, through its agents, "threatened the said plaintiff that unless said sale was made they would condemn said property, which condemnation would be costly to said plaintiff" and "would unquestionably result in the plaintiff receiving less for his property than the amount offered." At the time of the negotiations between plaintiff and the agents of the county there had been some exploration for oil and gas several miles north of plaintiff's property, but there had been no exploration for oil upon plaintiff's land, and no oil or gas had been developed on plaintiff's land or in the vicinity thereof. Plaintiff advised the county that the price offered by the county was solely upon an agricultural basis and did not include the oil potential, and he believed that oil and gas were on his said property even though no oil had been developed at that time. Plaintiff repeatedly requested that the county permit him to retain the mineral rights, but the county refused such requests. Plaintiff then proposed that he be permitted to retain one-half of the mineral rights with the stipulation that he be permitted to drill upon the land "only with the written permission of the defendant county at locations to be designated by said county." The county would not agree to the proposals and refused to offer the plaintiff additional compensation for his property, other than the price based on agricultural use. The "agents of defendant county advised plaintiff that he could not reserve the mineral rights under any conditions for the reason that the property was to be used as a prison farm and that in order to protect the property for that purpose that no prospecting or drilling for oil could be made thereon." Such representations were false,

and the county and its agents knew that such representations were false at the time they were made. Plaintiff relied upon said representations. Shortly after the county acquired the property of the plaintiff, the county entered into oil and gas leases with various oil companies, whereby exploration for oil, including drilling operations, was conducted at various places upon the ranch. Plaintiff was unable to obtain the agreement of the agents of the county that he retain the oil and gas rights or any portion of same under any terms or conditions. "[R]elying upon the false and fraudulent representations that a prison farm could not be conducted if the exploration for oil was conducted thereon, and by reason of the threats made by the agents of the defendant county that they could force him to convey his land by condemnation action, plaintiff by reason of the fraudulent misstatements and threats of condemnation, entered into a lease and option agreement, whereby defendant county was given a lease for a period of five years of the following described property: . . . [legal description of property stated in complaint]." Said lease and option agreement provided that the county would have the option to purchase the land at any time within such five-year period for the agricultural evaluation of the land in the amount of $148,000. The county thereafter exercised such option and "purchased such property by a deed dated July 7, 1939," which deed was accepted by the board of supervisors on July 11, 1939, and was recorded July 20, 1939. The county was not authorized by any of the general provisions of the law of the State of California to acquire land for a prison farm. It was necessary for the county to obtain special legislation in order to acquire land for such purpose. A special statute, chapter 843 of the Statutes of 1921 (a copy of which is attached to the complaint), was passed, which statute created the sole authority for the board of supervisors to acquire the land for the prison farm. Such statute specifically and solely authorized the board of supervisors to acquire land solely for the purpose of a prison farm and only so many acres of land suitable for agricultural purposes as should be necessary for such farm "as set forth in the statute" and for no other purpose. No part of the gas or oil underlying said property was necessary or appropriate for the purposes of said prison farm or for the purpose of any other legitimate public use, and the county was without any right to acquire rights to said oil and gas. Since the acquisition of said property from plaintiff, the county has received

bonuses of approximately $500,000 from oil companies for oil and gas leases. About August 22, 1950, oil was first discovered on said land by the defendant The Texas Company under an oil and gas lease between said company and the county, under which lease The Texas Company had the exclusive right to drill for and produce oil upon said land, and under which lease the county received one-sixth of the gas and oil produced therefrom. Since August 22, 1950, oil has been produced from said land in large quantities. The total compensation paid by the county for the land was $148,000. The reasonable value of such property, including oil, gas and other hydrocarbons and minerals underlying the land at the time of acquisition by the county, was in excess of $100,000,000.

Further allegations of the first cause of action were: Plaintiff A. M. Dunn is informed and believes that the value of the oil taken from said property to date by The Texas Company exceeds $21,000,000; the amount of royalties paid to the county is in excess of $3,500,000; and defendants continue to produce oil from said land and will continue to do so for many years at the rate of approximately $4,500,000 ''worth of oil'' per year.

Further allegations of the first cause of action were: An actual controversy exists between plaintiff and defendants in that: (a) Plaintiff contends that the county was without any right to take any interest in plaintiff's land beyond that necessary for the use of said land for agricultural purposes, and the county had no right to acquire any of the oil and gas underlying said land, whereas the defendants contend that the county had a right to acquire by purchase or otherwise the entire fee, including the oil and gas. (b) Plaintiff contends that he has at all times been the owner of the minerals, including oil, gas and other hydrocarbons underlying said land, and that the county was without right to enter into a lease respecting such minerals with The Texas Company, whereas the defendants contend that said oil and gas lease is valid and that The Texas Company has all the rights of a lessee under the lease. (c) Plaintiff contends that The Texas Company and other defendants at all times have been and now are without any right in taking oil from the land. (d) Plaintiff contends that the county had no right to enter into any lease with The Texas Company, and that The Texas Company could not and did not obtain any right in connection with the property or the oil and gas by virtue of a lease from the county ''which had no right or authority to execute such

lease," and the defendants hold any profits taken from said land as constructive trustees for plaintiff and are obligated to account to plaintiff for the reasonable value of all such oil that has been taken, whereas the defendants contend that they are entitled to all oil taken from the land and are under no obligation to account for its value. (e) Plaintiff contends that the county is obligated to account to plaintiff for all purported royalties received by it for oil produced from the land, and that the county holds purported title to the oil and gas underlying such land as constructive trustee for plaintiff and that the county is obligated to reconvey such oil and gas rights to plaintiff, whereas the county contends that it is entitled to all such royalties and is not obligated to account to plaintiff or to reconvey such oil and gas rights.

A further allegation of the first cause of action was: About August 18, 1955 (the day preceding the filing of the complaint), plaintiffs filed a claim in writing with the board of supervisors for the damages and demands set forth in the complaint.

The second cause of action (to quiet title) incorporated, by reference, the allegations of the first cause of action (declaratory relief), except the allegations as to the controversy between plaintiffs and defendants. The second cause of action alleged further: Plaintiff is and at all times mentioned in the complaint was the owner and entitled to the possession of all the oil and gas underlying the land. Defendants claim an interest therein adverse to the plaintiff; the claims of the defendants are without right; and that the defendants have no right or interest in the oil and gas underlying said premises.

The third cause of action (for damages for inverse condemnation) incorporated, by reference, the allegations of the first cause of action, except the allegations as to the controversy between plaintiffs and defendants. The third cause of action alleged further: The county has taken property of plaintiff, namely, the oil and gas underlying the land, without just compensation having first been made or paid into court for plaintiff. The value of the oil and gas and other hydrocarbons underlying said land was not included in the price established by the appraisers, and such price included only the value of the property for agricultural purposes. The value of such oil and gas, including the oil and gas heretofore produced from said land, is in excess of $100,000,000.

The fourth cause of action (for an accounting) incorporated, by reference, the allegations of the first cause of action,

except the allegations as to the controversy between plaintiffs and defendants. The fourth cause of action alleged further: The defendants have acquired and hold the rights to the oil and gas underlying said property and all income derived from the exploitation of such oil and gas rights and the development thereof in trust as constructive trustees for the use and benefit of plaintiff and are obligated to account to plaintiff for the value of all the oil and gas taken from the land by the defendants.

The prayer was for a declaration of the rights of the parties; an accounting for the oil and gas taken from the property, and for the proceeds therefrom; a decree quieting plaintiffs' title to the oil and gas and other minerals underlying the property; and for $50,000,000 damages.

The county demurred to the complaint upon the following grounds: the complaint did not state facts sufficient to state a cause of action; and each cause of action stated is barred by sections 318, 319, 338 (subds. 2 and 4), and 343 of the Code of Civil Procedure. The demurrer was sustained without leave to amend as to the second, third and fourth causes of action, but was overruled as to the first cause of action (declaratory relief).

The answer of the county alleged, among other things, that the cause of action for declaratory relief was barred by certain sections of the Code of Civil Procedure (being the same sections which are designated in its demurrer); that plaintiffs had been guilty of laches and unreasonable delay in bringing the action; and that plaintiffs are estopped to prosecute the action.

The answer of The Texas Company alleged, among other things, as follows: Each of the causes of action set forth in the complaint is barred by sections 336 and 338, subdivisions 2 and 4, of the Code of Civil Procedure, and by laches. Plaintiffs are estopped "from making" the claims set forth in the complaint as against said defendant in that about June 7, 1950, plaintiffs, in consideration of $3,614.73 paid to them by said defendant, executed and delivered to said defendant a written instrument (a copy of which was attached to the answer) whereby plaintiffs leased to said defendant the exclusive right to explore for and take oil, gas and other hydrocarbons from a 150-foot strip of land referred to in the complaint and excluded from the land description in the complaint; in the written instrument (lease of the strip) reference was expressly made to the oil and gas lease, dated

April 20, 1950, between the county and The Texas Company; plaintiffs knew at the time of leasing the strip that the only method by which the strip could be developed for oil was by drilling wells on the land leased by the county to The Texas Company; the lease of the strip provided that the term of the lease granted therein was for 20 years and so long thereafter as oil or gas or other hydrocarbons are produced from the strip or from the land leased by the county to The Texas Company; the lease of the strip also provided that The Texas Company should pay to plaintiffs .297 of one per cent of the market value of all oil, gas, or other hydrocarbons produced from the land leased by the county to The Texas Company and from said 150-foot strip.

The Texas Company filed an amendment to its answer and attached thereto a copy of a grant deed from plaintiffs to the county. The amendment alleged that the copy of the deed attached was a copy of the deed referred to in the complaint, and that plaintiffs executed and delivered said deed to the county on or about the day of its date (July 7, 1939).

The county made a motion (1) for a judgment of dismissal under section 1061 of Code of Civil Procedure (which section provides that the court may refuse to declare rights); (2) for judgment on the pleadings; and (3) for a summary judgment. The county filed, with its notice of said motion, an affidavit of James S. Allison. Copies of the following documents were attached to the affidavit: a notice of intention of the board of supervisors (dated June 6, 1939) to purchase the property described in the complaint; an affidavit of publication of such notice; a deed dated July 7, 1939, executed by Mr. Dunn and Mrs. Dunn which recited that they granted to the county the property described in the complaint; and an order of the board of supervisors accepting the deed. The affidavit states that Mr. Allison is the chief clerk of the board of supervisors, and that the copies of the documents attached to the affidavit are copies of the originals of said documents which are on file with said board.

The Texas Company made a motion for judgment on the pleadings.

The motion of the county for judgment on the pleadings and for a summary judgment, and the motion of The Texas Company for judgment on the pleadings, were granted. A document entitled, "Judgment of Dismissal and Declaratory Judgment," was entered on March 30, 1956. The judgment, after reciting that the demurrer of the county had been pre-

viously sustained without leave to amend as to the second, third, and fourth causes of action, stated that plaintiffs take nothing as against the county or The Texas Company on the second, third and fourth causes of action; "that the plaintiffs are not, and neither of them is, the owner of or has any right in or to the oil, gas, or other hydrocarbons underlying the land described in plaintiffs' complaint"; and that neither the county nor The Texas Company holds or has held any of the profits from the land for or on behalf of the plaintiffs or either of them. Plaintiffs appeal from the judgment.

Mr. Dunn died on January 21, 1957, and Myrtle May Dunn, Alvin D. Dunn and Citizens National Trust and Savings Bank of Los Angeles, as "Executors" of the Estate of Alvin M. Dunn, were substituted "as plaintiffs and appellants" in place of A. M. Dunn.

Appellants contend (1) that the deed from the Dunns to the county conveyed no more than the county could condemn, that is, the deed conveyed an easement for use of the surface only and did not convey the fee title including the oil rights; and (2) that "if the deed actually conveyed the fee simple, including the oil rights, then it was of no effect and invalid for it was obtained by a mutual misunderstanding of the law, coupled with coercion practiced by the county and, in addition, was invalid because of constitutional prohibitions."

The oil, gas, and other hydrocarbons and minerals underlying the land will be referred to as the oil rights.

■ With reference to their contention that the deed to the county conveyed an easement for the use of the surface only and did not convey the fee title, appellants argue that the county in obtaining the deed acted under the Industrial Farm Act, and under that act the only interest the county could acquire by purchase or condemnation was an easement for use of the surface for farming (and jail) purposes; and that the deed did not convey a greater estate than the act authorized the county to acquire.

The act, referred to by appellants as "Industrial Farm Act" (Stats. 1921, ch. 843, p. 1615; now Pen. Code, §§ 4100-4135), in effect at the time plaintiffs executed the deed, was entitled, "An act providing for the establishment and administration of industrial farms or industrial road camps in the counties of the state and the commitment thereto and discipline of persons charged with or convicted of public offenses." The act provided, in part, as follows: "SECTION 1. In each county of this state an industrial farm . . . may be

established under the provisions of this act. . . . Sɛᴄ. 4. . . . For the purpose of establishing such farm the board of supervisors may acquire by condemnation, purchase, lease or donation as many acres of land suitable for agriculture as may be necessary for the purposes of such farm. . . . The board of supervisors shall erect on such land such buildings and structures and make such improvements . . . as may be necessary or convenient to carry out the purposes of this act. . . . Sɛᴄ. 5. When said land has been acquired and such buildings and structures erected and improvements made . . . the board of supervisors shall adopt a resolution proclaiming that an industrial farm . . . has been established in the county . . . ." In *People* v. *Cockrill*, 62 Cal.App. 22 [216 P. 78], the court said at page 33: "The word 'purchase' has a definite and well-understood juridical meaning . . . and when used for the purpose of characterizing a transaction involving property of any kind it is readily to be understood therefrom that there has been an acquisition by one or more parties of the title to such property." In *McCarty* v. *Southern Pac. Co.*, 148 Cal. 211 [82 P. 615], the court said at page 221: "It may be granted that where the statute in terms provides for the condemnation of the 'land' or of 'lands' for the public uses and purposes, or where an equivalent term is used, it will usually be construed to authorize the taking of the fee." In *Crockett Land & Cattle Co.* v. *American Toll Bridge Co.*, 211 Cal. 361 [295 P. 328], plaintiff's land had been taken by condemnation for an approach to a toll bridge, and the bridge company had built houses under the floor level of the bridge and used them in connection with the operation of the bridge. About three years after the condemnation decree, the plaintiff commenced an action to recover possession of the land (and claimed the right to occupy the houses), on the theory that the condemnation did not vest the fee title of the land in the condemner, and that the bridge company acquired only an easement in the land—that the bridge company did not have the right to condemn the fee but had the right to condemn only an easement. In that case the court said at page 364: "The law is that where the statute in terms provides for the condemnation of lands for public use, it will be construed to authorize the taking of the fee." It was held therein that the fee title was condemned and that plaintiff was not entitled to occupy the houses. The act, referred to as the Industrial Farm Act, authorized the board of supervisors to acquire by purchase or condemnation "as many acres of land suitable

for agriculture as may be necessary for the purposes of such farm.'' (Appellants do not contend that the land was not suitable for agriculture.) Appellants argue further to the effect that the condemnation provisions of said act are to be considered in connection with the provisions of section 1239 of the Code of Civil Procedure which relates to condemnation generally; that under said section 1239 (as it read in 1921, when it was adopted, and in 1939, when negotiations were had with the Dunns) the county could not acquire the fee title to the property for a prison farm but could acquire only an easement for that purpose. Section 1239 of the Code of Civil Procedure, as it read in 1921 and in 1939, was in part, as follows: ''The following is a classification of the estates and rights in lands subject to be taken for public use: 1. A fee simple, when taken for public buildings or grounds, or for permanent buildings . . . or when the property is taken by any . . . county, . . . 2. An easement, when taken for any other use . . . .'' Section 1239 of the Code of Civil Procedure did not limit the interest the county could acquire in land for a prison farm to an easement. The county was empowered to acquire the fee title to the land by condemnation. There was no condemnation proceeding herein, but reference is made to condemnation for the reason appellants argue that the county could not acquire more by the deed than it could by condemnation, and that by condemnation it could acquire only an easement. Appellants' contention that the deed conveyed only an easement is not sustainable.

With reference to appellants' contention to the effect that the deed was void as a conveyance of the oil rights, appellants argue that oil rights are separate and distinct property from the surface of the land and have no public use, and therefore the county could not have taken the oil rights by condemnation or purchase. They argue further that the representation that the Dunns could not under any conditions reserve the oil rights was a misstatement of law, and since the Dunns executed the deed in reliance upon such representation, the deed was void as a conveyance of the oil rights. As above stated, the county was empowered to acquire the fee title by condemnation or purchase. A fee title to property includes the oil rights. Oil rights are defined as the exclusive right to drill for and produce oil from the land. (See *Bernstein* v. *Bush,* 29 Cal.2d 773, 778 [177 P.2d 913]; *Delaney* v. *Lowery,* 25 Cal.2d 561, 571 [154

P.2d 674].) The representation to the effect that appellants could not under any circumstances reserve the oil rights was susceptible of various interpretations. The whole representation, according to the complaint, was that the Dunns could not reserve the mineral rights under any conditions *for the reason that the property was to be used as a prison farm* and that *in order to protect the property for that purpose* no prospecting or drilling for oil could be made thereon. The representation should not necessarily be interpreted to mean that as a matter of law the oil rights could not be reserved. It might be interpreted as meaning that as a matter of policy or efficiency in operating a prison farm reservation of oil rights, which might interfere with the security of the prison, should not be allowed. In any event the statement was an opinion given at a time when a condemnation proceeding and the establishment of a prison farm were being discussed. If it was an opinion of law that the county was empowered to acquire the fee title (which would include the oil rights) the opinion was correct. If it was an opinion of law that even though the county could take the fee title by condemnation it was also required as a matter of law to take the oil rights, the opinion was not correct. Even though the county could have taken the fee by condemnation, it was not required as a matter of law to take the oil rights, and it could have allowed a reservation of the rights. However, as a matter of policy or efficiency in preventing the escape of prisoners, the county might have considered that it should not allow a reservation of oil rights which might interfere with the security of the prison. The reason stated by the county agents (as the reason for not allowing the reservation) indicates that the agents were not giving an opinion as to the law. It cannot properly be concluded that the representation was a misstatement of law or that by reason of such representation the deed was void.

Appellants argue further that the taking of the oil rights was not necessary in order to protect the property for use as a prison farm, and that the representation by the county's agents that the taking of the rights was necessary for such protection was false. The county alleged in its answer that the action, insofar as it is based on fraud and mistake, is barred by section 338, subdivision 4, of the Code of Civil Procedure. That section provides that an action for relief on the ground of fraud or mistake must be commenced within three years from the date the cause of action accrued and that

the cause of action shall not be deemed to have accrued until discovery by the aggrieved party of the facts constituting the fraud or mistake. In *Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412 [159 P.2d 958], the court said at page 437: "The provision tolling operation of the statute until discovery of the fraud has long been treated as an exception and, accordingly, this court has held that if an action is brought more than three years after commission of the fraud, plaintiff has the burden of pleading and proving that he did not make the discovery until within three years prior to the filing of his complaint." (See also *English* v. *City of Long Beach,* 126 Cal.App.2d 414, 421 [272 P.2d 875].) The same rule applies to actions for relief on the ground of mistake. (See *Goodfellow* v. *Barritt,* 130 Cal.App. 548, 559 [20 P.2d 740].) In the present action, plaintiffs allege, in effect, that in July, 1939, they made and delivered the deed to the county; that about August, 1950, The Texas Company, while acting under an oil lease made by the county, discovered oil on the property, and since that time oil has been produced therefrom. The complaint was filed in August, 1955, which was more than three years after oil was discovered on the property. Plaintiffs did not allege when they discovered that the county had executed the lease with The Texas Company, or when they discovered that The Texas Company commenced drilling operations on the property, or when they discovered that The Texas Company had found oil thereon. Appellants assert, however, that oil rights are regarded as an interest or estate in real property, and that "an action for recovery of real property must be commenced within five years, even though possession was obtained by fraud or undue influence"; and since the first invasion of plaintiffs' property rights in the oil, through the medium of production of oil, occurred August 22, 1950, and since the complaint was filed August 18, 1955, it was filed within five years after the original trespass. As above stated, the county also pleaded that the action is barred by sections 318, 319, and 338, subdivision 2, of the Code of Civil Procedure. Section 318 provides: "No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seised or possessed of the property in question, within five years before the commencement of the action." Section 319 provides: "No cause of action, or defense to an action, arising out of the title to real property, or to rents or profits out

of the same, can be effectual, unless it appear that the person prosecuting the action, or making the defense, or under whose title the action is prosecuted, or the defense is made, or the ancestor, predecessor, or grantor of such person was seised or possessed of the premises in question within five years before the commencement of the act in respect to which such action is prosecuted or defense made." Section 338, subdivision 2, (when read in connection with § 335) provides that an action for trespass upon or injury to real property must be commenced within three years. ■ As asserted by appellants, oil rights are regarded as an interest in real property. (See *Bernstein* v. *Bush,* 29 Cal.2d 773, 778 [177 P.2d 913]; *Standard Oil Co.* v. *J. P. Mills Organization,* 3 Cal.2d 128, 132-133 [43 P.2d 797]; *Carlson* v. *Lindauer,* 119 Cal. App.2d 292, 302 [259 P.2d 925].) ■ The complaint alleges that the Dunns executed the deed in July, 1939; and that oil was discovered by The Texas Company about August 22, 1950. The action was commenced August 19, 1955, which was more than 16 years after the Dunns executed the deed, and about five years after the discovery of oil. If the action be regarded as one to recover oil rights (an interest in real property) it is barred by section 319 of the Code of Civil Procedure (five years); if it be regarded as one to recover for trespass upon or injury to real property it is barred by said section 338, subdivision 2, (three years); if it is based on fraud or mistake it is barred by said section 338, subdivision 4, (three years). ■ "[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations." (*Maguire* v. *Hibernia S. & L. Soc.,* 23 Cal.2d 719, 733 [146 P.2d 673, 151 A.L.R. 1062].) ■ "[T]he period of limitations applicable to ordinary actions . . . should be applied in like manner to actions for declaratory relief." (*Maguire* v. *Hibernia S. & L. Soc., supra,* 734.)

■ The Texas Company attached to its answer a copy of the oil lease which said company and the Dunns entered into on June 7, 1950, and in which lease reference was expressly made to the oil lease which the county and said company entered into on April 20, 1950. Section 448 of the Code of Civil Procedure provides: "When the defense to an action is founded upon a written instrument, and a copy thereof is contained in the answer, or is annexed thereto, the genuineness and due execution of such instrument are deemed admitted, unless the plaintiff file . . . an affidavit denying

the same . . . ." Plaintiffs did not file such an affidavit, and therefore the genuineness and due execution of oil lease (between The Texas Company and the Dunns) were admitted. ▮▮▮ It appears from that lease that Mr. and Mrs. Dunn knew on June 7, 1950, that the county and The Texas Company had entered into an oil lease on April 20, 1950, whereby the county had granted The Texas Company the right to drill for and produce oil from the property. It therefore appears that Mr. and Mrs. Dunn knew on June 7, 1950, which was more than five years before the action was commenced on August 19, 1955, that the county was not adhering to its alleged representation "that in order to protect the property for use" as a prison farm no drilling for oil could be made thereon. If the Dunns considered that such representation was fraudulent or was a mistake and that, by reason thereof, they had a cause of action for relief on the ground of fraud or mistake, it appears that they discovered the facts constituting the fraud or mistake more than five years before the action was commenced (i.e., they discovered the fact on June 7, 1950, and the action was commenced on August 19, 1955).

Appellants assert that they could have obviated the contentions as to the statute of limitations, laches, and estoppel by amending the complaint. They state that the amendment would have been to the effect that the plaintiffs continued to rely on the false representations of the county agents, regarding the reservation of oil rights, until about June 6, 1955, when an attorney (not present counsel) informed them that "misrepresentations as to the existing law had been made to them" when the agents said that plaintiffs could not under any condition retain the mineral rights. As above stated, the whole representation, already alleged in the complaint, includes a statement of the reason the oil rights could not be reserved. That reason indicates that the agents were not making a representation as to the law but were stating a matter of policy in operating a secure prison farm. The proposed amendment would merely add to the existing allegations a statement that plaintiffs relied on the presently alleged representation until an attorney informed them to the effect that the representation was a misrepresentation as to law. The trial court, in determining the matter of an amendment, could consider the statements in the lease between plaintiffs and The Texas Company which established that plaintiffs knew on June 7, 1950 (more than five years before the commencement of the action) that the county had entered into an oil

lease with The Texas Company. In view of such knowledge by the plaintiffs, an amendment to the effect that plaintiffs continued thereafter (for more than five years) to rely on the representation that the oil rights could not be reserved would not materially change plaintiffs' position with respect to the issues. During the period of eleven years following the making of the deed by plaintiffs and preceding the making of the oil lease by the county, the plaintiffs apparently did not seek information as to the accuracy of the alleged legal opinion given by the county agents. Also, during a period of approximately five years after plaintiffs knew that the oil lease had been made by the county, they apparently did not seek information as to the accuracy of the alleged legal opinion. It appears that it was after oil was produced in large quantities that plaintiffs received information that there was an alleged misrepresentation as to law.

 Appellants contend further that the deed was void as a conveyance of the oil rights because the Dunns executed the deed under threats by the county agents of "costly condemnation proceedings," which threats were a "form of coercion." This contention is not sustainable. The county had the right to maintain a condemnation proceeding, and the fact that the agents said that such a proceeding would be costly would not constitute a ground for declaring the deed void as a conveyance of the oil rights. Furthermore, the county pleaded that the action was barred by section 343 of the Code of Civil Procedure. That section provides that an action for relief not otherwise provided for must be commenced within four years after the cause of action accrued. In *Wade* v. *Busby*, 66 Cal.App.2d 700 [152 P.2d 754], it was said (p. 702) that an action to set aside a deed upon the ground of undue influence was governed by the four-year period of limitation prescribed in section 343 of the Code of Civil Procedure. In the present case the claim regarding coercion was barred by said section.

 Appellants contend further that the deed was void as a conveyance of the oil rights because the purchase price was based on the value of the land for agricultural purposes. The complaint alleged that the option agreement between plaintiffs and the county provided that the county would have the option to purchase the land "for the agricultural evaluation of the land in the amount of $148,000." This contention is not sustainable.

 The Texas Company pleaded: (1) that plaintiffs are

estopped to claim as against it that the deed to the county did not convey the oil rights; and (2) that any such claim as against it is barred by laches. It argues, in effect, that plaintiffs acknowledged the validity of the lease between The Texas Company and the county by execution of the lease between plaintiffs and The Texas Company covering the 150-foot strip; that plaintiffs thereby induced The Texas Company to carry on the development of the property in the belief that it held a valid lease; that plaintiffs may not now take a contrary position; and that since it appears from the allegations of the complaint that oil was discovered on the property by The Texas Company about August 22, 1950, plaintiffs' claim is barred by laches. On June 7, 1950, the Dunns and The Texas Company executed an oil and gas lease covering the 150-foot strip, which lease refers in several places to the oil and gas lease between the county and The Texas Company. The royalty payable to the Dunns under the 150-foot strip lease is based upon production of oil and gas from the 150-foot strip and from the land leased by the county to The Texas Company. Appellants are estopped to claim as against The Texas Company that the deed to the county did not convey the oil rights. In view of that conclusion, it is not necessary to determine whether the claim of appellants against The Texas Company is barred by laches.

The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.

A petition for a rehearing was denied January 3, 1958, and appellants' petition for a hearing by the Supreme Court was denied January 28, 1958. Carter, J., was of the opinion that the petition should be granted.