[Civ. No. 9947. Third Dist. Jan. 26, 1961.]

RIO VISTA GAS ASSOCIATION (a Corporation), Appellant, v. STATE OF CALIFORNIA et al., Respondents.

*Assigned by Chairman of Judicial Council.

556

Hildebrand, Bills & McLeod for Appellant.

Stanley Mosk, Attorney General, Robert Burton, Deputy Attorney General, McCutchen, Black, Harnagel & Shea,

Harold A. Black, Morris M. Doyle, Ray Vandervoort, G. Richard Doty, Richard H. Peterson, Frederick W. Mielke, Jr., John A. Sproul, Michael G. Harrington, Archibald M. Mull, Jr., Hanna & Morton, Harold C. Morton, Max K. Jamison, Pillsbury, Madison & Sutro, Turner H. McBaine, Thomas E. Haven, J. Arthur Tucker and R. K. Barrows for Respondents.

SCHOTTKY, J.—This is an appeal from a judgment in the superior court sustaining a demurrer to plaintiff's first amended complaint without leave to amend. The plaintiff Rio Vista Gas Association also appeals from an order of the lower court refusing to rescind cost bonds on file and from the taxing of costs under section 473 of the Code of Civil Procedure after the time for filing a cost bill had expired.

The allegations of the first amended complaint are substantially as follows: that plaintiff Rio Vista Gas Association, appellant, is the owner of the mineral rights in and under several parcels of property. This property lies in the neighborhood of the city of Rio Vista in Sacramento County, along the east bank of the Sacramento River and beneath the river. The action is brought in inverse condemnation against the defendant State of California for exercising an illegal and unwarranted dominion over the plaintiff's mineral rights in the land. Before being taken from the plaintiff and its predecessors, the land was used for grazing sheep. The lands were taken for the sole and specific purpose of dumping "spoils" or debris excavated by dredging operations of the California Debris Commission and the Sacramento and San Joaquin Drainage District. A fee for the dumpage of such "spoils" was sought by the State of California, acting as an agent for the federal government. At no time was any price paid for anything except the surface agricultural use of the property, and nothing was allowed for possible mineral values, nor was anything at any time sought by the State of California except the surface use for the purpose above. In the face of federal condemnation proceedings and the threat of such proceedings as to some of the land, the plaintiff, or its predecessors in interest, deeded its interest in said property to the Sacramento and San Joaquin Drainage District for such purposes.

The first amended complaint further alleges the Sacramento and San Joaquin Drainage District was not empowered by statute to take even surface title, but merely to manage

such land for the federal government. Also, it is alleged that in addition to using the land for spoilage purposes, involving the surface use by the Sacramento and San Joaquin Drainage District, the district leased the property to various oil companies for the extraction of gas; and that these defendant companies sold the gas extracted to defendant Pacific Gas and Electric Company. The oil companies are alleged to have received $16,000,000 and the State of California and the Sacramento and San Joaquin Drainage District, $2,000,000.

Plaintiff further alleges that the gas field involved is at a depth of 3,500 to 5,000 feet below the surface and that natural gas does not remain in place and is a migratory substance. There has been a common practice for at least 20 years to employ directional drilling, and it is not necessary to own the surface immediately above the gas in order to drill for it.

Plaintiff also alleges the federal government and the Sacramento and San Joaquin Drainage District were without power to take any interest in plaintiff's land beyond that necessary for "spoilage" purposes and that the action here was unconstitutional under the provisions of the Fifth and Fourteenth Amendments to the Constitution of the United States and article I, section 14, of the Constitution of California.

Plaintiff finally alleges that the State of California has not paid plaintiff any sum of money for the mineral rights to plaintiff's property and the surface rights were acquired merely on the basis of the then value of the agricultural surface use of the property. Plaintiff alleges that on August 31, 1956, it filed a "Claim for Damages" with various state agencies, which claim was rejected and disallowed.

The prayer for damages is for such sum as will compensate plaintiff for royalties and gas taken by defendants within the applicable statute of limitations and also for the cancellation of the oil leases.

Plaintiff also alleged a second cause of action in the nature of a class suit, which has apparently been abandoned.

Attached to the complaint as Exhibit "A" are descriptions of the various parcels conveyed. The deeds themselves do not appear in Exhibit "A" but do appear in an affidavit of Joseph N. Soderstrand as exhibits 1 through 4, which are stipulated by plaintiff to be correct copies of the deeds referred to in the complaint. It should be noted that all these deeds contain typical language conveying a fee absolute without any reservations or restrictions.

The fourth deed is followed by an attached map constructed

by the Reclamation Board which bears the legend, "Right of Way in Fee." The earliest deed is dated July 28, 1915, and the latest May 24, 1934.

On the hearing on demurrer the lower court was of the opinion that the legal effect of the deeds was to convey a fee title absolute to the property. The court was also of the opinion that any claim of plaintiff to relief is barred by the statute of limitations. Also, a motion to rescind a prior order fixing bond was denied. The final judgment of dismissal was entered June 16, 1959, giving all defendants their respective costs of suit and in addition a reasonable counsel fee to the defendant State of California.

The appellant raises four major issues on this appeal: (1) that the effect of the deeds was not to vest a fee simple absolute in the State of California, but rather only a "surface fee"; (2) that the dismissal without leave to amend was an abuse of the discretion of the lower court; (3) that the order requiring cost bonds was improper; and (4) that the lower court erred in permitting a cost bill to be filed after the statutory time for filing had expired.

 Appellant's first contention cannot be sustained. The deeds involved, as set out in the Soderstrand affidavit, are clearly grant deeds purporting to convey the absolute fee. The only alleged ambiguity is as to Exhibit 4. In that exhibit a map was attached bearing the notation, "Right of Way in Fee." It is not clear whether this map was attached when the deed was executed. However it was attached when the deed was recorded. The deed does not refer to the map as such. The parol evidence rule would prohibit the use of the map to construe otherwise unambiguous deeds.

Exhibits 6 through 9 of the Soderstrand affidavit contain deeds to parcels originally included in appellant's class action, which was apparently abandoned in the lower court. However, appellant argues these exhibits are still material to the ambiguity in Exhibit 4, which is in issue here. The map following Exhibit 6 (deed) bears the legend, "Easement For Levee Purposes," and the deed attached merely purports to convey an easement and not a fee simple. The relationship of deed to map is the same in Exhibit 8, and in these two cases the state admits that only an easement was conveyed. Exhibits 7 and 9, on the other hand, are substantially identical to the deed and attached map in Exhibit 4. The respondents maintain that the state is owner in fee simple of the parcels

conveyed by the deeds of Exhibits 7 and 9. Therefore, if relevant, as the appellant appears to contend, Exhibits 6 through 9 support respondents' contention that Exhibits 1 through 4 conveyed a fee simple absolute to the state.

We believe that Exhibits 1 through 4 conveyed a fee simple absolute title to the state. A grant deed should be interpreted in favor of the grantee. (Civ. Code, § 1069.) The transfer of a thing transfers also all its incidents, unless expressly excepted. (Civ. Code, § 1084.) A fee simple title is presumptively granted. (Civ. Code, § 1105; see *Basin Oil Co.* v. *City of Inglewood,* 125 Cal.App.2d 661 [271 P.2d 73].)

Appellant argues the state did not have the right or power to condemn the minerals and therefore received only a fee title as to the surface of the land. The mineral fee is alleged to have resided in plaintiff-appellant. Therefore it is argued, as gas is a fugitive substance and cannot be reduced to possession until withdrawn, the state acquired no better right by adverse possession, and in leasing gas rights merely exercised an unlawful dominion over appellant's property. Therefore it is urged that inverse condemnation is the proper remedy.

We are unable to agree with appellant's contention. We believe that the State of California did acquire a title in fee simple absolute. The Reclamation Board and the Sacramento and San Joaquin Drainage District have been authorized to acquire property since 1913. (Cal. Stats. 1913, ch. 170, p. 252; § 3, p. 253; § 12, p. 268, now codified in Wat. Code, §§ 8504 and 8590.) This authority includes authority to acquire and hold fee title. (Code Civ. Proc., § 1239, subd. 2.) Section 8598, subdivision (d), and sections 8662, 8676 and 8677 of the Water Code remove any doubt that it was the Legislature's intent that the Reclamation Board have power to hold title in fee and lease gas rights in land so held.

Appellant contends also that the taking here was in violation of article I, section 14, of the California Constitution and the Fifth and Fourteenth Amendments to the Constitution of the United States. It is further contended that since the consideration paid did not specifically include an allowance for the value of oil, gas or minerals that this reduces the title acquired by the state. Also appellant contends that since the land was deeded because of threatened condemnation merely a surface fee was vested in the Reclamation Board. Appellant argues that the property was acquired for limited purposes, dredging and piling waste, and that as the surface

use of the property was sufficient for these purposes, the Legislature was without power to authorize the drainage district to hold fee title. This argument is based upon the recognized principle that agencies of the state may only take property for a public use. As a corollary, appellant contends that no greater title vested by reason of the deeds than was necessary to fulfill the public use contemplated.

Appellant relies upon *United States* v. *Union Pacific Railroad Co.*, 353 U.S. 112 [77 S.Ct. 685, 1 L.Ed.2d 693], where it was held that a grant by the federal government of a "right of way" did not convey a fee to the railroad. That decision is totally inapplicable to the facts in this case. No deed by an individual was involved, but rather an act of Congress granting the "right of way" (not a fee simple as in this case). The court construed the act as not conveying a fee as a major congressional purpose was the preservation of mineral resources. It was pointed out that land grants are construed favorably to the government and not against it. Also "mineral lands" were expressly reserved in the grant.

Also, appellant relies heavily upon *People* v. *Thompson*, 43 Cal.2d 13 [271 P.2d 507]. That case and the cases cited at page 19 of that opinion are clearly inapplicable to the present situation. In the Thompson case the grant deed itself was ambiguous. The Political Code provided at the time that deed was executed that the public would acquire, in accepting land for a highway, "only the right of way." (§ 2631 prior to 1935.) The court held that merely an easement was conveyed. In the present situation the deeds themselves purport to convey a fee, the Legislature has authorized the conveyance of the fee to the drainage district, and the map attached to the deed of the fourth parcel, as pointed out previously, contains the legend, "Right of Way in Fee," not "right of way," as both the deed and the statute provided under the facts of the Thompson case. Also, the legend in the map is no part of the deed in this case and so cannot limit the estate granted. Furthermore, the Thompson case itself recognizes the fact that its decision is limited to the situation where the legislative intent to limit the interest conveyed is clearly expressed. At page 20 of the Thompson case, *Palmer* v. *Los Angeles etc. Ry. Co.*, 55 Cal.App. 519, 521 [203 P. 1012] ; *Midstate Oil Co.* v. *Ocean Shore R. R. Co.*, 93 Cal.App. 704, 708 [270 P. 216] ; and *City of Oakland* v. *Schenck*, 197 Cal. 456, 466 [241 P. 545], are all cited for

the proposition that in the absence of legislative limitation as to taking property by deed, even where the deed included the term "right of way" in a grant deed to a railroad, that the term did not limit the interest conveyed to an easement. Also in these cases it was held that a railroad might acquire the fee by purchase, although they would have been limited to an easement if they had resorted to eminent domain proceedings. The case of *Southern Pac. R. R. Co.* v. *San Francisco Sav. Union,* 146 Cal. 290 [79 P. 961, 106 Am.St.Rep. 36, 2 Ann.Cas. 962, 70 L.R.A. 221], is in no way inconsistent with these cases. In the Southern Pacific case the railroad only intended to take an easement and did this by condemnation. The court simply held that by law the railroad was limited in condemnation to taking an easement.

In *Taylor* v. *Continental Southern Corp.,* 131 Cal.App.2d 267, 274 [280 P.2d 514], it was held that a dedication or conveyance for "park purposes" or use carries with it the oil and mineral rights. In *Arechiga* v. *Housing Authority,* 159 Cal. App.2d 657, 659 [324 P.2d 973], the authorities are reviewed and the rule is clearly enunciated that even where the power of the state to condemn a fee estate exists, the need for taking the land is judged at that time, and cannot be later attacked upon the basis of subsequent events. "[T]he general rule is that the property does not revert to its former owner when it ceases to be used for the purpose for which it was condemned."

While appellant makes an able and ingenious argument, it is unconvincing. Furthermore, the case of *Dunn* v. *County of Los Angeles,* 155 Cal.App.2d 789 [318 P.2d 795] (hearing denied and certiorari denied, 357 U.S. 344 [78 S.Ct. 1370, 2 L.Ed.2d 1367]), is directly contrary to appellant's position. In that case defendants' demurrer to the complaint was sustained without leave to amend. The Dunn case involved real property in Los Angeles County which was purchased by the county for use as a prison farm pursuant to the Industrial Farm Act. (Cal. Stats. 1921, p. 1615, now Pen. Code, §§ 4100-4135.) The only provisions of that act relating to the acquisition of property provided (§ 4) : "For the purpose of establishing such farm the board of supervisors may acquire by condemnation, purchase, lease or donation as many acres of land suitable for agriculture as may be necessary for the purposes of such farm."

. The conveyance to the county in the Dunn case was by a

deed absolute in form. Subsequently exceedingly valuable oil deposits were discovered on the land. The plaintiffs in that case contended, among other things, that the county was authorized to acquire only an easement in the surface for farming and jail purposes; that their deed conveyed no more than the county was authorized to acquire; and that the remaining rights in the land, including oil and gas rights, remained vested in the plaintiffs. After an analysis of the applicable law, the court held that the deed vested the oil and gas rights in the county, saying at page 800:

"Section 1239 of the Code of Civil Procedure did not limit the interest the county could acquire in land for a prison farm to an easement. The county was empowered to acquire the fee title to the land by condemnation. There was no condemnation proceeding herein, but reference is made to condemnation for the reason appellants argue that the county could not acquire more by the deed than it could by condemnation, and that by condemnation it could acquire only an easement. Appellants' contention that the deed conveyed only an easement is not sustainable.

". . . As above stated, the county was empowered to acquire the fee title by condemnation or purchase. A fee title to property includes the oil rights. Oil rights are defined as the exclusive right to drill for and produce oil from the land. (See *Bernstein* v. *Bush*, 29 Cal.2d 773, 778 [177 P.2d 913]; *Delaney* v. *Lowery*, 25 Cal.2d 561, 571 [154 P.2d 674].)"

In the instant case the statutory authority for the reclamation district to acquire land was as follows: "The reclamation board shall have power to acquire either within or without the boundaries of the district, by purchase, condemnation or by other lawful means, in the name of the Sacramento and San Joaquin drainage district, . . . all lands, rights of way, easements, property, or material necessary or requisite for the purpose of by-passes, weirs, cuts, canals, sumps, levees, overflow channels and basins, reservoirs and other flood control works, and other necessary purposes, including drainage purposes; . . . ." (Cal. Stats. 1925, ch. 343, § 2, p. 608.)

We believe that this statutory authorization is so similar to that involved in the Dunn case that there is no logical basis for distinguishing the two cases. The arguments made by appellant in the instant case were considered and rejected as unsound in the Dunn case.

Having reached the conclusion that the respondent State of California acquired fee simple title to the property in controversy, including rights to oil and gas, and all mineral rights, it is unnecessary to discuss the further questions of laches and the statute of limitations discussed in the briefs.

In view of what we have hereinbefore stated, we conclude that the court properly sustained the demurrers without leave to amend. We agree with the following analysis of the trial judge:

"The Court is of the opinion that the legal effect of the deeds whereby defendants predecessor in interest took the real property herein involved was to convey the fee title absolute to the property in said several deeds described without reservation.

". . . [N]othing would be gained by permitting the filing of plaintiff's second amended complaint."

Appellant makes the further contention that the orders of the trial court requiring cost bonds were signed by judges disqualified to act, and further that no bond should be required in an inverse condemnation action.

The record shows that the attorney general moved for an increase in the size of appellant's bond above the statutory minimum of $500. (Gov. Code, § 647.) The basis of the motion was the extensive research conducted by the state and the appellant's lack of assets. Section 647 of the Government Code provides a reasonable attorney fee may be recovered by the state as well as other costs. The final order was issued by Judge Henry, Superior Court of Sacramento County, on November 8, 1957, directing plaintiff-appellant to furnish an additional undertaking of $2,000, making the total bond set at $2,500. Appellant filed a motion contesting the bond in February 1959. This motion was denied by Judge Vernon Stoll, who all parties agree is qualified.

It is clear that on these facts the appellant waived any right to object to the qualifications of Judge Henry under section 170, subdivision 6, of the Code of Civil Procedure, by failure to raise the issue at the earliest practical opportunity. (See *Caminetti* v. *Pacific Mutual Life Ins. Co.,* 22 Cal.2d 386 [139 P.2d 930] ; *Sacramento etc. Drainage Dist.* v. *Jarvis,* 51 Cal.2d 799 [336 P.2d 530].) Secondly, even if not waived, Judge Stoll, who was admittedly qualified, could have ordered a new undertaking of the same amount as was previously imposed. His order denying the motion would have the same effect.

■ A cost bond may be required in inverse condemnation proceedings. (See *Vinnicombe* v. *State,* 172 Cal.App.2d 54 [341 P.2d 705], hearing by Supreme Court denied.)

■ Appellant's final contention is that the lower court erred in permitting a cost bill to be filed after the time required by section 1033 of the Code of Civil Procedure. It is well established that under section 473 of the Code of Civil Procedure a superior court may grant relief to a party where through mistake, inadvertence or excusable neglect a memorandum of costs has not been filed within the statutory period. (See *Soda* v. *Marriott,* 130 Cal.App. 589 [20 P.2d 758]; and *Kallmeyer* v. *Poore,* 52 Cal.App.2d 142, 151-153 [125 P.2d 924], which specifically applies to section 1033 of the Code of Civil Procedure.) In the present case the memorandum of costs was timely prepared and placed in the mail. A copy was received by appellant's counsel within the time allowed for filing, but the original was apparently lost in the mail and never reached the superior court clerk's office. The failure of the original to be filed was discovered 11 days after mailing, and the attorney general immediately moved to be relieved of the late filing. We believe that under the circumstances here present the question of whether the late filing of the cost bill should be permitted was within the discretion of the trial court, and we cannot hold that the discretion was abused.

■ Respondent State of California has asked that this court in its decision award it attorney fees for this appeal. Said respondent points to section 647 of the Government Code which provides that at the time of filing any action against the state the plaintiff shall file an undertaking "conditioned upon payment by the plaintiff of all costs incurred by the State in the suit, including a reasonable counsel fee to be fixed by the court, if plaintiff fails to recover judgment in the action." The trial court awarded respondent state the sum of $750 as and for counsel fees for legal services in the superior court.
■ As stated in *Cirimele* v. *Shinazy,* 134 Cal.App.2d 50, at page 52 [285 P.2d 311, 52 A.L.R.2d 860] : "A contract for a reasonable attorney's fee in enforcing its provisions embraces an allowance for legal services rendered upon appeal as well as during the trial. (*Hahn* v. *Hahn,* 123 Cal.App.2d 97, 103 [266 P.2d 519].)" (See also *Anderson* v. *Hiatt,* 181 Cal. App.2d 9, 12 [4 Cal.Rptr. 858].) The same rule should apply where a statute provides for the awarding of attorney fees.

■ In the instant case the trial court awarded respond-

ent state the sum of $750 for attorney fees in the defense of this action in the superior court. The case appears to have been extensively and thoroughly presented and briefed in the superior court, and in view of this fact, we believe that only a moderate allowance for legal services on appeal should be made. Accordingly, respondent State of California should be allowed the sum of $500 attorney fees on this appeal.

The judgment and orders are affirmed and respondent State of California is awarded an additional $500 as attorney fees on appeal.

Van Dyke, P. J., and Peek, J., concurred.